HINER v MOJICA

Docket No. 267521. Submitted July 12, 2006, at Detroit. Decided July 20, 2006, at 9:10 a.m. Leave to appeal sought.

Von R. Hiner brought a personal injury action against Julissa Mojica in the Oakland Circuit Court after he fell and injured his leg while trying to avoid the defendant's dog during a house call to fix the defendant's cable equipment. The trial court, Rudy J. Nichols, J., granted the defendant's motion for summary disposition on the ground that the plaintiff had failed to establish sufficient support for his claims.

The Court of Appeals *held*:

1. The trial court properly granted summary disposition of the plaintiff's strict-liability claim because, although the evidence tended to establish that the defendant's dog was agitated and hostile in the plaintiff's presence, it did not establish that the dog was abnormally vicious or had unusually dangerous propensities.

2. A question of fact exists regarding whether the defendant was negligent in failing to control or restrain her dog. The plaintiff presented sufficient evidence for reasonable minds to conclude that the defendant was negligent in failing to exercise due care in restraining her dog and preventing foreseeable harm to the plaintiff.

3. The open and obvious danger doctrine does not bar the plaintiff's claim because the claim was not based on a theory of premises liability but, rather, on the defendant's ordinary negligence in failing to control her dog.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. ANIMALS — DOGS — STRICT LIABILITY.

A dog owner is strictly liable for damage done by the dog only if he or she knows or had reason to know of the dog's vicious nature; evidence of common canine behavior such as barking or jumping toward strangers is insufficient to establish that a dog's owner knew or should have known that the dog was abnormally dangerous.

2. ANIMALS — DOGS — NEGLIGENCE.

    A dog's owner may be held liable for negligently failing to restrain the dog in situations where a danger of foreseeable harm might arise.

3. NEGLIGENCE — ORDINARY NEGLIGENCE — OPEN AND OBVIOUS DANGER DOCTRINE.

    The open and obvious doctrine does not bar claims based on ordinary negligence; rather, it bars only those claims that are based on a theory of premises liability.

*Mihelich & Kavanaugh, PLC* (by *Michael P. Kavanaugh* and *Mark A. Vrana*), for the plaintiff.

*Merry, Farnen & Ryan, P.C.* (by *Michael T. Ryan* and *Stephanie L. Nawrocki*), for the defendant.

Before: JANSEN, P.J., and MURPHY and FORT HOOD, JJ.

PER CURIAM. In this personal-injury action, plaintiff appeals as of right the trial court's grant of summary disposition in favor of defendant. We affirm in part, reverse in part, and remand for further proceedings.

### I. BASIC FACTS

Plaintiff and his partner, Darrell Meece, worked for a subcontractor of Comcast, a local cable service provider. Meece went to defendant's home in late February or early March 2004 to service defendant's cable equipment. Plaintiff did not accompany Meece on this initial service call. Meece testified during his deposition that upon arriving at defendant's home, he immediately noticed that defendant's dog was "[v]ery aggressive." Meece testified that as he pulled his truck into defendant's driveway, the dog came up to his driver-side door and prevented him from exiting the vehicle. Meece stated that he was forced to call defendant from his truck and ask her to come outside to restrain the dog.

On the day of the incident underlying this case, Meece and plaintiff went to defendant's home for a follow-up service call. Meece and plaintiff went to defendant's front door, but did not see defendant's dog. They entered defendant's home and began to examine defendant's cable equipment. Meece and plaintiff installed a new cable converter and told defendant that it would take approximately 45 minutes for the necessary information to download. The record indicates that Meece and plaintiff then left for another service call, but told defendant that they would call her later that day to check whether the new converter was working properly.

When Meece and plaintiff called defendant later that day, they discovered that the new converter was not working. Meece and plaintiff returned to defendant's home. Both men testified that upon returning to defendant's home, the dog was in the front yard, barking and growling. The record showed that an enclosed breezeway, connected to the side of defendant's home and garage, ran between defendant's front yard and backyard. According to Meece and plaintiff, the dog was tied to a long leash that ran from the back of defendant's house through the breezeway, out the front door of the breezeway, and into the front yard. Plaintiff testified that the front door of the breezeway had been closed on the leash, restricting the dog's movement to the area immediately surrounding the door. Nonetheless, plaintiff testified that the dog was nearly able to reach him and Meece as they approached defendant's front porch. Meece testified that the dog repeatedly jumped and lunged toward the porch, and was "constant[ly] barking and snarling."

Upon reaching the porch, Meece and plaintiff entered defendant's home. After further diagnostic tests of the

cable equipment, Meece and plaintiff determined that defendant's outside cable line was in need of replacement. Plaintiff testified that he asked defendant to make sure that the dog could not get into the backyard because he and Meece needed to access the backyard and replace the cable line. Meece testified that he told defendant, "the dog doesn't like us," and that defendant nodded in agreement with the remark.

Meece and plaintiff went outside to get their tools from the truck. According to plaintiff, the dog was still in the front yard at that time. Meece and defendant testified that the back door of the breezeway was propped open.[1] However, because the front door of the breezeway was closed, plaintiff did not believe that the dog would be able to get into the backyard. Meece and plaintiff walked around the side of defendant's garage and into the backyard, where they examined defendant's cable line and cable box. Meece and plaintiff then began walking back toward the front yard to get additional supplies from their truck. Plaintiff testified that as he and Meece rounded the side of defendant's garage, he could see into the front yard, where the dog was pulling on its leash. Plaintiff testified that the front door of the breezeway then "shot open," allowing the dog to enter the breezeway and gain access to the backyard through the breezeway's backdoor. Both Meece and plaintiff testified that as they were walking toward their truck, the dog came at them from behind, charging toward them from the backyard. Because they did not know the exact length of the dog's leash, Meece and plaintiff became concerned that the dog might be able to reach them.

---

[1] Defendant testified during her deposition that she had locked the back door of the breezeway and did not know how the dog could have gotten into the backyard.

Plaintiff testified that he entered "a panic state," and that he and Meece began to run. He testified that Meece ran toward the front yard while he ran toward the side property line. Meece testified that as he was running, he briefly felt the dog come into contact with his toolbelt. Plaintiff successfully eluded the dog, but tripped or slipped on the soft, muddy ground. Plaintiff could not stand following the incident, and Meece helped him back to the truck. Plaintiff suffered a ruptured Achilles tendon, which required surgery, and other injuries to his right leg. Plaintiff brought this action asserting claims of common-law strict liability and negligence.[2] The trial court granted summary disposition under MCR 2.116(C)(10), ruling that plaintiff had failed to establish sufficient record support for his claims.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood,* 461 Mich 109, 118; 597 NW2d 817 (1999). A motion brought under MCR 2.116(C)(10) tests the factual support of a plaintiff's claims. *Id.* at 120. We consider the affidavits, pleadings, depositions, admissions, and other admissible evidence in a light most favorable to the party opposing the motion. MCR 2.116(G)(5); *Maiden, supra* at 120. Summary disposition is appropriate under MCR 2.116(C)(10) if the proffered evidence fails to establish a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* A genuine

---

[2] Plaintiff also asserted a claim of statutory liability under Michigan's dog-bite statute, MCL 287.351. The trial court granted summary disposition of the statutory dog-bite claim pursuant to MCR 2.116(C)(8), ruling that plaintiff had failed to state a claim because he had not been bitten. Plaintiff does not appeal this ruling.

issue of material fact exists when the record leaves open an issue on which reasonable minds could differ. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

### III. COMMON-LAW ACTIONS AGAINST DOG OWNERS

Michigan's Dog Law, MCL 287.261 *et seq.*, specifically preserves "the common law liability of the owner of a dog for damages committed by it." MCL 287.288. Michigan has long recognized a strict-liability cause of action against possessors of certain domestic animals for harm caused by those animals, regardless of fault. *Trager v Thor*, 445 Mich 95, 99; 516 NW2d 69 (1994). Michigan also recognizes a cause of action for negligent failure to exercise ordinary care in controlling or restraining a domestic animal. *Id.* at 104-105; *Rickrode v Wistinghausen*, 128 Mich App 240, 247; 340 NW2d 83 (1983). These two theories of liability may be pleaded in the alternative. *Trager, supra* at 105.

### A. STRICT LIABILITY

Under the common law, a dog owner is strictly liable for damage done by the dog only if he or she knows or has reason to know of the dog's vicious nature. *Nicholes v Lorenz*, 396 Mich 53, 59 n 3; 237 NW2d 468 (1976); *Szkodzinski v Griffin*, 171 Mich App 711, 714; 431 NW2d 51 (1988). "Strict liability attaches for harm done by a domestic animal where three elements are present: (1) one is the possessor of the animal, (2) one has scienter of the animal's abnormal dangerous propensities, and (3) the harm results from the dangerous propensity that was known or should have been known." *Trager, supra* at 99. The theory underlying common-law strict liability is that "[t]he liable party is deemed to have chosen to expose those around him to

the abnormal danger posed by the animal he chooses to keep and must, as a consequence, shoulder any costs resulting from that danger." *Id.* at 100. In order to prevail on a claim of common-law strict liability, "[a] plaintiff need not prove that the owner or custodian knew that his or her domestic animal had already attacked human beings when unprovoked . . . ." *Rickrode, supra* at 245. Instead, a plaintiff need only prove

> that the owner knew or had reason to know that the animal had a dangerous tendency that is unusual and not necessary for the purposes for which such an animal is usually kept. 3 Restatement Torts, 2d, § 509, comment *c*, p 16. It is enough for [a] plaintiff to prove that the animal has exhibited a tendency to attack human beings or other animals such that the owner would be apprised of the animal's dangerous character. Sufficient as well is evidence that the animal has exhibited any form of ill temper in the presence of human beings that would apprise a reasonable owner that the animal would attack if uncontrolled. 3 Restatement Torts, 2d, § 509, comment *g*, pp 17-18. [*Rickrode, supra* at 245-246.]

Whether a domestic animal has exhibited ill temper or aggressive behavior sufficient to apprise the owner of an unusually or abnormally violent disposition is generally a question for the finder of fact. See *Massengile v Piper*, 294 Mich 653, 660; 293 NW 897 (1940). However, if reasonable minds could not differ, then the question becomes one of law for the court. See *Dep't of Transportation v Christensen*, 229 Mich App 417, 424; 581 NW2d 807 (1998).

Viewed in a light most favorable to plaintiff, the evidence in the instant case tended to establish that defendant's dog was agitated and hostile in the presence of Meece and plaintiff. Evidence showed that the dog barked and growled at Meece during the initial service call to defendant's property, approaching

Meece's vehicle in an aggressive manner. Meece was apparently forced to call defendant to have her restrain the dog as he got out of his truck. Evidence also showed that upon Meece's and plaintiff's arrival for the follow-up service call, the dog was again agitated, barking and growling as the men approached defendant's house. The evidence indicated that as the men walked toward defendant's front porch, the dog attempted to jump or lunge toward them, restrained only by its leash.

While the evidence indicated that defendant's dog was barking, snarling, and jumping toward Meece and plaintiff, the evidence did not establish that the dog was abnormally vicious, or that the dog had unusually dangerous propensities of which defendant knew or should have known. Courts in several foreign jurisdictions have found similar evidence insufficient to establish notice of a dog's dangerous propensities. See *Plowman v Pratt*, 268 Neb 466, 471; 684 NW2d 28 (2004) (a dog's barking is "[n]ormal canine behavior," and it is unreasonable to attribute vicious propensities to a dog merely because it barks at strangers); *Collier v Zambito*, 1 NY3d 444, 447; 775 NYS2d 205; 807 NE2d 254 (2004) ("nothing in our case law suggests that the mere fact that a dog was kept enclosed or chained or that a dog previously barked at people is sufficient to raise a triable issue of fact as to whether it had vicious propensities"); *Yuzon v Collins*, 116 Cal App 4th 149, 164; 10 Cal Rptr 3d 18 (2004) (dog's "pushing, barking, and jumping" was common behavior and was insufficient to give notice of dog's dangerous propensities); *Swain v Simon*, 699 SW2d 769, 773 (Mo App, 1985) ("[e]vidence of a dog's barking, running loose, jumping and lunging" do not create issue of fact with respect to viciousness because they are activities common to all dogs); *Allen v Whitehead*, 423 So 2d 835, 837 (Ala, 1982) ("evidence that a dog was large and mean looking, chased and

barked at cars, and frequently barked at neighbors" is insufficient to raise genuine issue of fact regarding whether dog has vicious propensities); *Royer v Pryor*, 427 NE2d 1112, 1117 (Ind App, 1981) (it is not reasonable to attribute vicious propensities to a dog "merely because [it] barks at strangers" or "because a person is afraid of the dog").

Although judicial decisions from foreign jurisdictions are not binding, *Cleary Trust v Muzyl Trust*, 262 Mich App 485, 494 n 5; 686 NW2d 770 (2004), we find the logic of the above cases persuasive. Accordingly, we hold that the mere fact that a dog barks, growls, jumps, or approaches strangers in a somewhat threatening way is common canine behavior. Thus, such behavior will ordinarily be insufficient to show that a dog is abnormally dangerous or unusually vicious. Because the evidence presented in this case was insufficient to raise a genuine issue of fact regarding whether defendant's dog had displayed unusually aggressive tendencies or an abnormally violent disposition, summary disposition of plaintiff's strict-liability claim was properly granted in favor of defendant.

### B. NEGLIGENCE

Michigan law also recognizes that the owner of a domestic animal who does *not* have knowledge of the animal's dangerous propensities may be held liable for negligently failing to restrain the animal or prevent harm by the animal. *Trager, supra* at 104-105. Certain domestic animals are regarded as so unlikely to do substantial harm that their owners have no duty to keep them under constant control. *Id.* at 105-106. Thus, the mere failure to do so would not constitute a breach of the duty of care. *Id.* "However, if the possessor of such an animal . . . has knowledge of some dangerous

propensity unique to the particular animal, or is aware that the animal is in such a situation that a danger of foreseeable harm might arise, the possessor has a legally recognized duty to control the animal to an extent reasonable to guard against that foreseeable danger." *Id.* at 106; see also 3 Restatement Torts, 2d, § 518, comments g, j, and k, pp 31-33. Accordingly, the owner of such an animal may be held liable in negligence

> "when there is ineffective control of an animal in a situation where it would reasonably be expected that injury could occur, and injury does proximately result from the negligence. The amount of control required is that which would be exercised by a reasonable person based upon the total situation at the time, including the past behavior of the animal and the injuries that could have been reasonably foreseen." [*Id.*, quoting *Arnold v Laird*, 94 Wash 2d 867, 871; 621 P2d 138 (1980).]

To make a prima facie showing of negligence, a plaintiff need only establish that the defendant failed to exercise ordinary care under the circumstances to control or restrain the animal. *Rickrode, supra* at 247.

As noted, the evidence in the present case showed that defendant's dog was aggressive with Meece during the initial service call, barking and immediately approaching Meece's vehicle as he drove up to defendant's residence. Defendant was aware of the dog's behavior because Meece called her from inside the vehicle to ask her to restrain the dog. On the day of the incident, defendant was again made aware of the dog's behavior. Defendant spoke to Meece and plaintiff while they were on the front porch, as the dog was barking nearby. The evidence showed that at that time, the dog was attempting to jump or lunge toward Meece and plaintiff. Finally, Meece remarked to defendant at some point that the dog did not like him and plaintiff. Defendant apparently nodded as if to show agreement. The record evidence

established that defendant should have been aware that the dog presented a situation from which "a danger of foreseeable harm might arise." *Trager, supra* at 106. Thus, defendant had a legally recognized duty to control her dog to the extent reasonable to guard against foreseeable danger. *Id.*

Viewed in a light most favorable to plaintiff, the evidence indicated that defendant had closed the front door of the breezeway on the dog's leash. However, the evidence also suggested that the back door of the breezeway was propped open. Although the exact length of the dog's leash is unclear from the record, the evidence showed that the leash was either tied or attached somewhere near the back of the house or garage. The leash was apparently long enough to provide the dog access to the backyard, and to allow it to reach or nearly reach Meece's and plaintiff's positions as they ran from the animal.

We find sufficient allegations from which reasonable minds could conclude that defendant was negligent in failing to properly control or restrain her dog. The evidence might lead a rational finder of fact to determine that defendant failed to exercise reasonable care in restraining her dog and in preventing foreseeable harm to Meece and plaintiff. In contrast, the evidence might lead a rational finder of fact to conclude that defendant properly fulfilled her duty to Meece and plaintiff by sufficiently restraining the dog while the men worked in the backyard. "Such questions are for the trier of fact, and cannot be resolved on motion for summary disposition." *Id.* at 107. We reverse the trial court's grant of summary disposition for defendant on plaintiff's negligence claim.[3]

---

[3] With respect to the trial court's observation that it was not foreseeable that plaintiff would "run off towards the side of the yard catching his

### IV. INAPPLICABILITY OF THE OPEN
### AND OBVIOUS DANGER DOCTRINE

Finally, defendant argues that the open and obvious danger doctrine bars plaintiff's action because plaintiff should have known of the soft, muddy ground on which he tripped or slipped. However, plaintiff's claim is based on defendant's failure to reasonably control the dog— *not* the alleged hazard presented by the muddy condition of the ground. Moreover, the applicability of the open and obvious danger doctrine depends on the theory underlying the negligence action. *Laier v Kitchen*, 266 Mich App 482, 489-490, 502; 702 NW2d 199 (2005) (opinions of NEFF, J., and HOEKSTRA, P.J.). The doctrine applies to an action based on premises liability, but not ordinary negligence. *Id*. While there is some support for the proposition that a premises-liability action may be founded on a dog's presence on the land, *Klimek v Drzewiecki*, 135 Mich App 115, 119; 352 NW2d 361 (1984) (dog treated as a condition on the land), the duty owed by a landowner is separate and distinct from the duty owed by the dog's owner, *id*. at 118. Plaintiff does not rely on premises-liability principles in this appeal. Instead, he relies on the duty recognized in *Trager, supra*, which derives from ordi-

---

boot in the mud and popping his tendon," the inability to foresee the *precise manner* in which the injury occurred is not fatal to plaintiff's negligence claim. "A plaintiff need not establish that the mechanism of injury was foreseeable or anticipated in specific detail. It is only necessary that the evidence establishes that some injury to the plaintiff was foreseeable or to be anticipated." *Schultz v Consumers Power Co*, 443 Mich 445, 452-453 n 7; 506 NW2d 175 (1993); *Allen v Owens-Corning Fiberglas Corp*, 225 Mich App 397, 408-409; 571 NW2d 530 (1997); see also 3B CJS, Animals, §§ 327, 334, pp 403, 415 ("[a]ll that the law requires to be shown in a negligence claim is that the injury could have been reasonably anticipated, and it is not necessary to have foreseen the particular injury which did happen, or the exact manner in which the injury occurred").

nary-negligence principles rather than premises-liability theory. The open and obvious doctrine is inapplicable to plaintiff's ordinary negligence claim.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.