# STATE OF MICHIGAN

# COURT OF APPEALS

ALTICOR INC.,

Plaintiff-Appellant/Cross-Appellee,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee/Cross-
Appellant.

UNPUBLISHED
February 9, 2016

No. 323350
Court of Claims
LC No. 12-000139-MT

Before: RIORDAN, P.J., and JANSEN and FORT HOOD, JJ.

JANSEN, J. (*dissenting*).

I respectfully dissent. I would reverse the decision of the Court of Claims on both issues and conclude that (1) the reimbursements for services rendered by the shared employees did not constitute sales because the reimbursements were for services rendered by employees to their employers, and (2) the payments made by Quixtar to plaintiff with regard to plaintiff's customer list constituted sales rather than royalties.

I first conclude that the Court of Claims erred when it determined that the reimbursements for services rendered by the shared employees were sales. As articulated in the majority opinion, the services must constitute business activities in order for the reimbursement to be considered a sale. See 2000 PA 477; 1982 PA 376. The Single Business Tax Act (SBTA) defines "business activities" to include, in relevant part, "the performance of services . . . with the object of gain, benefit, or advantage, whether direct or indirect, to the taxpayer or to others, *but shall not include the services rendered by an employee to his employer*." MCL 208.3(2) (emphasis added). Thus, the definition of "business activities" specifically excludes "services rendered by an employee to his employer." *Id*. In this case, the employees at issue were referred to as "the shared employees" in the Court of Claims. Plaintiff contends that under *Kaiser Optical Sys, Inc v Dep't of Treasury*, 254 Mich App 517; 657 NW2d 813 (2002), the shared employees of a parent company who perform services on behalf of an affiliate represent business activities of the affiliate company rather than the parent company. In *Kaiser*, a Michigan-based affiliate corporation reimbursed its parent company, based in California, for the services that the parent company's accounting staff, which was also based in California, regularly rendered to the affiliate. *Id*. at 519. This Court declined to hold that the parent company was the actual employer of the shared employees because the facts did not establish that the affiliate had no right to control the shared employees. *Id*. at 524. This Court also held that the employees

-1-

established a sufficient physical presence in California for the affiliate to establish a sufficient nexus with the State of California for tax purposes. *Id*. at 527. Similarly, in this case, the shared employees' services cannot be business activities because the shared employees were acting as the affiliates' employees and were rendering a service to their employer (the affiliates). Like in *Kaiser*, the facts do not establish that the affiliates had no right to control the shared employees. See *id*. at 524. Thus, the services at issue are excluded from the definition of a business activity because they were services rendered by employees to their employer. Therefore, the reimbursement payments were not "sales" within the meaning of the SBTA because they were not reimbursements for business activities. See MCL 208.3(2)

I also conclude that the Court of Claims erred in determining that the payments from Quixtar to plaintiff were royalties rather than sales. As noted in the majority opinion, the term "royalties" is not defined in the SBTA. The main arguments advanced by the parties can be separated into two issues. First, whether the Supreme Court's definition of "royalties" announced in *Mobil Oil Corp v Dep't of Treasury*, 422 Mich 473; 373 NW2d 730 (1985), applies outside of the context of oil and gas royalties. Second, whether royalties must take the form of either a product itself or the proceeds from the sale of a product.

In *Mobil Oil*, our Supreme Court discussed the meaning of the term "royalties" in the context of oil and gas leases under the SBTA. *Mobil Oil*, 422 Mich at 484. The Court explained:

> *The Random House College Dictionary* defines a "royalty" as
>
>> a compensation or portion of the proceeds *paid* to the owner of a right, as a patent or oil or mineral right, for the use of it . . . an agreed portion of the income from a work paid to its author, composer, etc., usually a percentage of the retail price of each copy sold . . . a royal right, as over minerals, granted by a sovereign to a person or corporation . . . the *payment* made for such a right.
>
> This definition includes mineral and oil "royalties" with the "royalties" paid for patents and copyrights and refers to them as a "payment." Black's Law Dictionary defines a "royalty" as
>
>> Compensation for the use of property, usually copyrighted material or natural resources, expressed as a percentage of receipts from using the property or as an account per unit produced. A payment which is made to an author or composer by an assignee, licensee or copyright holder in respect of each copy of his work which is sold, or to an inventor in respect of each article sold under the patent. Royalty is share of product or profit reserved by owner for permitting another to use the property. . . . In mining and oil operations, a share of the product or profit *paid* to the owner of the property. [*Id*. (citations omitted).]

In *Michigan United Conservation Clubs v Dep't of Treasury*, 239 Mich App 70, 79; 608 NW2d 141 (1999), aff'd 463 Mich 995 (2001), this Court quoted the definitions of "royalty" from *Mobil Oil* and explained that a royalty "has the following elements or characteristics: (1) it is a payment, (2) in the form of either the product itself or proceeds from the sale of the product, and (3) made in consideration for the use of the property." This Court determined that tax credits were not royalties and clarified that the tax credits did not meet the element that a royalty must be in the form of the product itself or proceeds from the sale of the product. *Id*. This Court later used the same three-part test to determine that network affiliation fees paid by cable operators to TV networks constituted royalties. *Columbia Assoc, LP v Dep't of Treasury*, 250 Mich App 656, 673; 649 NW2d 760 (2002). The Court also explained that the affiliation fees were payment for the use of copyrighted material based on the number of subscribers, and thus the fees fell within the definition articulated in *Mobil Oil*. *Id*. at 673-674. Thus, it is clear that the definition of "royalty" from *Mobil Oil* is applicable outside of the context of oil and gas royalties because this Court has applied that definition to other contexts as well. It is also clear that the payments made by Quixtar to plaintiff are not royalties under the three-part definition announced in *Michigan United Conservation Clubs* because the payments do not come in the form of the product—plaintiff's customer list—or proceeds from the sale of the product. See *Michigan United Conservation Clubs*, 239 Mich App at 79. Instead, the payment was a fixed percentage of Quixtar's sales regardless of whether the sales were generated from plaintiff's customer list.

As plaintiff contends, this Court has stated that the definitions from *Mobil Oil* were articulated in the context of oil and gas royalties and the definitions "were not used as an all-encompassing definition of royalties for SBTA purposes." *Zenith Data Sys v Dep't of Treasury*, 218 Mich App 742, 747; 555 NW2d 264 (1996). However, *Zenith* is not entirely on point because it addressed the issue whether a copyright or a mere proprietary interest was needed in order for a payment to be considered a royalty payment. *Id*. at 745-746. In other words, *Zenith* did not directly address the issue whether royalty payments needed to be in the form of a product or proceeds from the sale of the product. See *id*.

Additionally, plaintiff argues that a royalty can result where a taxpayer pays a percentage of its gross sales for the right to use a style, trademark, or trade names, citing *Mourad Bros, Inc v Dep't of Treasury*, 171 Mich App 792, 796; 431 NW2d 98 (1988). Plaintiff argues that such a royalty does not come in the form of the licensed trademark or name. More importantly, *Mourad* cited *Mobil Oil* for the idea that a royalties constitute "payment received for the use of property." *Id*. In other words, this Court in *Mourad* did not distill a three-part test from *Mobil Oil* in the way that this Court in *Michigan United Conservation Clubs* did. However, *Mourad* is not binding on this Court under MCR 7.215(J)(1) because it was published before November 1, 1990, and the later cases discussed above clarify that the three-party test applies in order to determine whether a payment constitutes a royalty.

The majority notes that, under the definition of "royalty" quoted in *Mobil Oil*, a royalty could come from a percentage of the receipts from the use of property or a share of the profit resulting from another's use of property. This definition means that a payment under an arrangement wherein Quixtar gave plaintiff a percentage of its sales resulting from the use of plaintiff's customer list would constitute a royalty. Nevertheless, Quixtar's payments to plaintiff do not fall within the definition articulated in *Mobil Oil*. As defendant points out, the agreement between plaintiff and Quixtar gave plaintiff a fixed percentage of Quixtar's sales regardless of

-3-

whether the sales were generated from plaintiff's customer list. In other words, plaintiff received payments whether or not Quixtar's sales resulted from its use of plaintiff's customer list. Thus, the payments were not strictly a percentage of the receipts from the use of plaintiff's property, and therefore did not constitute royalties. See *Mobil Oil*, 422 Mich at 484.

To the extent that plaintiff relies on cases from other jurisdictions to support its position, the cases are not binding in this matter. See *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914, 920 (2006). In any event, defendant is also correct that the most relevant federal case cited by plaintiff still defined a royalty payment as " 'typically a percentage of profits or a specified sum *per item sold*.' " *Bellco Credit Union v United States*, 735 F Supp 2d 1286, 1304 (D Colo, 2010) (citation omitted; emphasis added). *Bellco Credit Union* does support plaintiff's argument in that the court in that case held that payments made from an insurance company to a credit union for the use of the credit union's member list to solicit insurance were deemed royalty payments. *Id*. at 1305-1306. However, the credit union in that case received a commission based on the number of its customers that bought the insurance, as well as a marketing bonus for renewing the contract. *Id*. at 1298. Thus, the credit union's royalties were based, at least in part, on sales that actually resulted from the insurance company's use of the customer list. In that manner, *Bellco Credit Union* is distinguishable from this case, wherein plaintiff gets a percentage of Quixtar's sales regardless of whether the sales were generated by the use of plaintiff's customer list. Accordingly, the payments from Quixtar to plaintiff related to the customer list constituted sales rather than royalties. For the reasons discussed above, I would reverse and remand for further proceedings.

/s/ Kathleen Jansen