# STATE OF MICHIGAN

# COURT OF APPEALS

SUSAN SCHMUNK,

Plaintiff-Appellee,

v

OLYMPIA ENTERTAINMENT, INC.,

Defendant-Appellant.

UNPUBLISHED
March 20, 2018

No. 334321
Wayne Circuit Court
LC No. 14-005945-NO

Before: K. F. KELLY, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

In this negligence action tried before a jury, defendant appeals as of right a final judgment in favor of plaintiff.

## I. BASIC FACTS

Plaintiff was at a college hockey tournament at the Joe Louis Arena on March 23, 2013 when she tripped and fell over a dolly that was being pulled by one of defendant's employees, Darrin Schultz. Defendant provides concession services. The trial court concluded that plaintiff's claim sounded in ordinary negligence, not premises liability. It also concluded that a question of fact existed as to Schultz's negligence and plaintiff's comparative negligence and denied defendant's motion for summary disposition. The trial court further ruled that plaintiff's expert, Robert Pachella, was qualified to offer an opinion on human factors that brought about such an accident. The matter proceeded to a jury trial. Surveillance footage from the date of plaintiff's fall was played numerous times for the jury.

The jury found that defendant was negligent and that its negligence was the proximate cause of plaintiff's injury. It found plaintiff comparatively negligent and attributed negligence to defendant at 70% and to plaintiff at 30%. It found that plaintiff sustained damages for past medical expenses in the amount of $28,588.03 and further found that plaintiff would sustain damages for future medical and/or out-of-pocket expenses in the amount of $48,000. The jury found that plaintiff's past non-economic damages totaled $150,000 and that she would not incur future non-economic damages.

The final judgment reflected an adjusted jury verdict of $158,611.62. Plaintiff was also awarded case evaluation sanctions and attorney fees for a total judgment against defendant in the amount of $246,591.52.

-1-

## II. DEFENDANT'S MOTION FOR DIRECTED VERDICT

Defendant first argues that the trial court erred when it denied defendant's motion for directed verdict based on the open and obvious doctrine.

"A directed verdict is appropriately granted only when no factual questions exist on which reasonable jurors could differ." *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 303 Mich App 441, 446; 844 NW2d 727 (2013), aff'd 497 Mich 337 (quotation marks omitted). "When evaluating a motion for directed verdict, the court must consider the evidence in the light most favorable to the nonmoving party, making all reasonable inferences in the nonmoving party's favor." *Locke v Pachtman*, 446 Mich 216, 223; 521 NW2d 786 (1994). A trial court's decision on a motion for directed verdict is reviewed de novo on appeal. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011). "In doing so, [an appellate court] review[s] the evidence and all legitimate inferences in the light most favorable to the nonmoving party. Only if the evidence, when viewed in this light, fails to establish a claim as a matter of law should a motion for a directed verdict be granted." *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011) (quotation marks and footnotes omitted).

"[T]he applicability of the open and obvious danger doctrine depends on the theory underlying the negligence action. The doctrine applies to an action based on premises liability, but not ordinary negligence." *Hiner v Mojica*, 271 Mich App 604, 615; 722 NW2d 914 (2006) (citation omitted). Our Court has explained:

> Michigan law concerning the open and obvious danger doctrine is derived from § 343A(1) of 2 Restatement Torts, 2d, p. 218, which provides:
>
>> A possessor of land is not liable to his invitees for physical harm caused to them by *any activity or condition* on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness. [Emphasis added. See *Bertrand, supra* at 610, 537 NW2d 185.]
>
> The confusion that has arisen apparently stems from the Restatement's reference to "any activity or condition on the land," thus prompting a misconception that the doctrine applies whenever the alleged negligence involves an activity or condition on the land. However, that language is clearly relevant only if the claim concerns the liability of a possessor of land to his invitees, i.e., premises liability. Likewise, the reference to a "condition on the land" in cases involving licensees is derived from § 342 of 2 Restatement Torts, 2d, p 210, and concerns only liability as a possessor of land, not negligent conduct in general. [*Laier v Kitchen*, 266 Mich App 482, 491; 702 NW2d 199 (2005).]

Therefore, "Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land." *Buhalis v Trinity Continuing Care*, 296 Mich App 685, 692; 822 NW2d 254 (2012). Premises liability is distinct from ordinary negligence because "liability arises solely from the defendant's duty as an owner, possessor, or occupier of the land."

*Id.* "If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence . . ." *Id.*

Plaintiff's complaint clearly alleged that Schultz was negligent in his conduct; the focus did not involve a condition on the land.[1] Plaintiff claims that Schultz engaged in negligent conduct by attempting to maneuver the cart around her without first ascertaining whether it was safe to do so. Because plaintiff's claim sounded in ordinary negligence and was not based on premises liability or a condition on the land, the open and obvious doctrine did not apply and the trial court correctly denied defendant's motion for a directed verdict.

## III. DEFENDANT'S MOTION FOR SUMMARY DISPOSITION

Defendant next argues that, even if this is considered an ordinary negligence claim, Schultz owed no duty to plaintiff to protect plaintiff from her own inattention.

An appellate court "reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Id*. at 120. This Court has explained:

> In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Barrow v Detroit Election Comm'n*, 305 Mich App 649, 661; 854 NW2d 489 (2014) (quotation marks and citations omitted).]

"To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages. Accordingly, a defendant is not liable to a plaintiff unless the defendant owed a legal duty to the plaintiff." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). "'Duty' is a legally recognized obligation to conform to a particular standard of conduct to protect others against an unreasonable risk of harm." *Laier*, 266 Mich App at 495–496 (quotation marks omitted). Our Supreme Court has explained:

---

[1] Defendant cites three unpublished cases in support of its position. Because they are unpublished, the cases are not precedentially binding. MCR 7.215(C)(1). Although defendant cites them as persuasive authority, they are not.

Actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law. The duty may arise specifically by mandate of statute, or it may arise generally by operation of law under application of the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others. This rule of the common law arises out of the concept that *every person is under the general duty to so act, or to use that which he controls, as not to injure another*. [*Clark v Dalman*, 379 Mich 251, 260–61; 150 NW2d 755 (1967) (emphasis added).]

"Ordinarily, whether a duty exists is a question of law for the court. If there is no duty, summary disposition is proper. However, if factual questions exist regarding what characteristics giving rise to a duty are present, the issue must be submitted to the fact-finder." *Laier,* 266 Mich App at 496.

In arguing that Schultz had no duty to protect plaintiff from herself, defendant is actually arguing that plaintiff is solely responsible for her own injury. This is a matter of causation, not duty. Our Court has explained:

An adult plaintiff has a duty to exercise reasonable care for his own safety and protection. Thus, the doctrine of pure comparative negligence distributes responsibility according to the proportionate fault of the parties. It requires that a plaintiff's damages be reduced in the same proportion by which the plaintiff's own conduct contributed to his or her injuries. The standards for determining the comparative negligence of a plaintiff are the same as those of a defendant-the jury must consider the nature of the conduct and its causal relationship to the damages-and the question is one for the jury unless all reasonable minds could not differ or because of some ascertainable public policy consideration. [*Laier,* 266 Mich App at 495–496 (citations omitted).]

The trial court properly denied defendant's motion for summary disposition where there were genuine issues of material fact regarding the comparative fault of plaintiff and Schultz.

IV. PLAINTIFF'S EXPERT

Defendant next argues that the trial court erred in overruling its objections that plaintiff failed to lay a proper foundation for Pachella's testimony.

A trial court's decision to preclude an expert from testifying is reviewed for an abuse of discretion. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Id.*

MRE 702 provides:

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"The admission of expert testimony requires that (1) the witness be an expert, (2) there are facts in evidence that require or are subject to examination and analysis by a competent expert, and (3) the knowledge is in a particular area that belongs more to an expert than to the common man." *Surman v Surman*, 277 Mich App 287, 308; 745 NW2d 802 (2007) lv den 480 Mich 1138 (2008). "A trial court should use its common sense to decide whether an untrained person would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from experts." *Zeeland Farm Services, Inc v JBL Enterprises, Inc*, 219 Mich App 190, 196–197; 555 NW2d 733 (1996). "For example, a jury does not require expert testimony to determine what a reasonable person would do in an ordinary negligence case." *Id.*

At no time did defendant challenge the testimony as unnecessary. Nor did defendant challenge Pachella's qualifications. Instead, defendant focuses entirely on what formed the basis for Pachella's opinions. "MRE 702 requires the trial court to ensure that each aspect of an expert witness's proffered testimony—including the data underlying the expert's theories and the methodology by which the expert draws conclusions from that data—is reliable." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 779; 685 NW2d 391 (2004), citing *Daubert*. Our Supreme Court has held:

This gatekeeper role applies to all stages of expert analysis. MRE 702 mandates a searching inquiry, not just of the data underlying expert testimony, but also of the manner in which the expert interprets and extrapolates from those data. Thus, it is insufficient for the proponent of expert opinion merely to show that the opinion rests on data viewed as legitimate in the context of a particular area of expertise (such as medicine). The proponent must also show that any opinion based on those data expresses conclusions reached through reliable principles and methodology.

Careful vetting of all aspects of expert testimony is especially important when an expert provides testimony about causation. [*Gilbert*, 470 Mich at 782 (footnote omitted).]

At trial, Pachella testified that he was in his 47th year as a professor of psychology at the University of Michigan. Pachella received his undergraduate degree, master's and Ph.D. from the University of Michigan in what was formerly known as Experimental Psychology and was now more commonly referred to as Cognitive Psychology. Cognitive psychology "is the study of basic normal abilities of sensory functions, perception, memory, language abilities, cognition or thinking, motor skills, motor performance and things of that sort." Pachella studied human abilities – or human factors – in real world settings. Pachella performed "forensics" in terms of

litigation cases, looking at the causal factors for accidents. Approximately 75% of his work was with plaintiffs and 25% with defendants.

Pachella testified that there were two factors that contributed to the accident. He first noted that the so-called "cocktail party effect" prevented plaintiff from hearing Schultz's alleged warnings that he was coming through with the cart. Under that phenomenon, an individual who is engaged in a conversation is unable to focus or appreciate the conversations around her. The second factor was plaintiff's lack of peripheral vision. He explained that because plaintiff was looking straight ahead, she could not see what was at her feet.

During cross-examination, Pachella acknowledged that he had not personally performed any research on the cocktail party effect. However, he noted that just because he did not research the issue did not mean that he was not well aware of the phenomena in his vast teaching experience. Some knowledge is so basic that it has been scientifically accepted over time. He did some studies with his students on peripheral vision. Pachella did not perform any studies regarding whether visual perception was increased or decreased by wearing sunglasses.

Given the limited nature of defendant's attack on Pachella's testimony, contesting only the fact that Pachella did not perform any tests himself and did not author any studies on either the cocktail party effect or issues of peripheral vision, the trial court did not abuse its discretion in admitting Pachella's testimony. Pachella was a highly respected professor of cognitive psychology whose position required him to understand phenomena that was basic to his profession, but likely unknown to the average lay person.

## V. DEFENDANT'S MOTION FOR PARTIAL JNOV

Finally, defendant argues that the trial court erred when it denied defendant's motion for partial judgment notwithstanding the verdict (JNOV) where plaintiff failed to prove with reasonable certainty that her injury would require future costs.

"[A] motion for JNOV should be granted only when there was insufficient evidence presented to create an issue of fact for the jury." *Heaton v Benton Const Co*, 286 Mich App 528, 532; 780 NW2d 618 (2009). "A directed verdict is appropriate only when no material factual questions exist on which reasonable minds could differ." *Merkur Steel Supply Inc v City of Detroit*, 261 Mich App 116, 123; 680 NW2d 485 (2004). "When deciding a motion for JNOV, the trial court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party and determine whether the facts presented preclude judgment for the nonmoving party as a matter of law." *Id*. at123-124. A trial court's ruling on a motion for JNOV is reviewed de novo. *Zaremba Equip, Inc v Harco Nat Ins Co*, 302 Mich App 7, 15; 837 NW2d 686 (2013).

Future damages are allowable under MCL 600.6301, which provides:

(a) "Future damages" means damages arising from personal injury which the trier of fact finds will accrue after the damage findings are made and includes damages for medical treatment, care and custody, loss of earnings, loss of earning capacity, loss of bodily function, and pain and suffering.

(b) "Personal injury" means bodily harm, sickness, disease, death, or emotional harm resulting from bodily harm.

"A party asserting a claim has the burden of proving its damages with reasonable certainty." *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 108; 535 NW2d 529 (1995). "Although damages based on speculation or conjecture are not recoverable, damages are not speculative merely because they cannot be ascertained with mathematical precision" and "[i]t is sufficient if a reasonable basis for computation exists, although the result be only approximate." *Id*. However, "a trial court should grant a party's motion for JNOV with respect to certain damages if the jury was permitted to speculate concerning the amount of those damages." *Shivers v Schmiege*, 285 Mich App 636, 645; 776 NW2d 669 (2009), quoting *Attard v Citizens Ins. Co. of America*, 237 Mich App 311, 321–322; 602 NW2d 633 (1999).

Plaintiff tore her rotator cuff, which necessitated surgery. Plaintiff's treating physician, Dr. Aalderink, testified that he was unable to say what the future would hold for plaintiff:

> That's a difficult question to predict. And I don't really want to predict. But I will say that, based on our orthopedic sports literature with rotator cuff tears that are large in the population over 60 that we know that there is an upwards of 40 percent chance of retearing and failure after that surgery. The bulk of that usually happens within the first three months. The fact that she made it through that time frame is certainly positive from my standpoint. Which implied to me that she possessed the biological ability to heal an injury of this nature. But as far as predicting whether or not she would ever reinjure that shoulder or have problems with it in the future I think is a very difficult question to answer.

Plaintiff achieved 70% function after her surgery and first round of physical therapy, but returned to Aalderink in April 2015 with a recurrence of pain. Aalderink could not say with certainty that plaintiff's complaints at that time related to the original injury but, in his experience, "unfortunately you can have issues with going forward." Aalderink was not surprised that plaintiff experienced pain in her arm and hand because "it's not uncommon to get swelling and disruption downstream." Aalderink noted:

> [A]ny time you weaken a part of the mechanics of the shoulder you can develop compensations by the shoulder blade. And this is very common and we'll see this a lot after any type of shoulder injury where life goes on, people find ways to keep doing things that they need to do. And sometimes those are good ways to compensate and sometimes they cause more stress and problems to other areas around the ball and cup joint.

Therefore, plaintiff faced not only a recurrence of injury, but also faced injuries to other areas as a result of over-compensating and the change in the mechanics of her shoulder. Aalderink admitted that he was ignorant of the billing side of his practice and expressed no opinion regarding the past or future costs of medical treatment. Still, based on the jury's award for past economic damages ($28,588.03), the jury was clearly aware of the costs of such treatment. The future damages were not speculative merely because they could not be ascertained with

mathematical precision. A reasonable basis for the jury's computation existed and the trial court correctly denied defendant's motion for partial JNOV.

Affirmed. As the prevailing party, plaintiff may tax costs.

/s/ Kirsten Frank Kelly
/s/ William B. Murphy
/s/ Michael J. Riordan