*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF PEYTON TEUTSCH, by KATIE
TEUTSCH, Personal Representative,

      Plaintiff-Appellee,

v

COSMOS VAN DE VEN, M.D., and ANITA
MALONE, M.D.,

      Defendants-Appellants,

and

ANGELA KELLY, M.D., and MADELINE
EDWARDS, M.D.,

      Defendants.

FOR PUBLICATION
April 1, 2021
9:00 a.m.

No. 349674
Washtenaw Circuit Court
LC No. 17-001060-NH

ESTATE OF PEYTON TEUTSCH, by KATIE
TEUTSCH, Personal Representative,

      Plaintiff-Appellee,

v

UNIVERSITY OF MICHIGAN REGENTS,
UNIVERSITY OF MICHIGAN HEALTH
SYSTEM, and UNIVERSITY OF MICHIGAN
MEDICAL CENTER,

      Defendants-Appellants.

No. 349703
Court of Claims
LC No. 17-000286-MH

Before: BECKERING, P.J., and SAWYER and SHAPIRO, JJ.

-1-

PER CURIAM.

In these consolidated medical-malpractice cases, defendants Cosmos De Ven, M.D., and Anita Malone, M.D., and the University of Michigan Board of Regents, University of Michigan Health System, and University of Michigan Medical Center (collectively "defendants") appeal by leave granted the Washtenaw Circuit Court's order striking two defense expert witnesses. On appeal, defendants argue that the trial court abused its discretion and applied an incorrect rationale when it granted plaintiff's motion to strike two defense experts on the basis that plaintiff's counsel had long-standing personal and professional relationships with the experts and shared nonconfidential information with them. We conclude that there is a need to establish a new rule of law regarding when an expert witness may be disqualified on the basis of a conflict of interest. Accordingly, rather than either affirming or reversing the trial court's decision, we will vacate the trial court's order and remand for reconsideration in light of this opinion.

Because we decline to analyze the facts of this case in light of our determination of the appropriate standard, only a brief recitation of the underlying facts is necessary. Plaintiff filed a complaint alleging that medical malpractice in performing a cesarean delivery by the defendant doctors resulted in decedent's death. During discovery, defendants filed a witness list, which included three potential expert witnesses: Dr. Mary D'Alton, Dr. Robert Gherman, and Dr. Steven Clark. Dr. D'Alton provided an affidavit of meritorious defense. Plaintiff moved to strike Drs. D'Alton and Clark. In support, plaintiff relied on a series of emails between plaintiff's counsel with the physicians seeking to retain them as experts for plaintiff. They declined and were later retained by the defense. Plaintiff argued that the emails contained confidential attorney work product, as well as there being a long-standing relationship between plaintiff's counsel and both experts.[1] Defendants' response was that no confidential information had been revealed by plaintiff's counsel to the experts and, in fact, the experts had little or no recollection of communicating with plaintiff's counsel about the case, nor were their opinions based on information provided by plaintiff. Following a hearing, the trial court granted plaintiff's motion to strike the experts, based both upon counsel's prior relationships with the experts as well as because of the contact between them on the case.

Two questions are presently before this Court: first, what test should a trial court apply when determining whether an expert witness should be disqualified on the basis of a conflict of interest; and second, applying that test to these cases, did the trial court abuse its discretion when it struck defendants' experts?[2] We will address the first question, but as indicated above we will leave it to the trial court on remand to address the second. Our state's courts review de novo

---

[1] According to plaintiff, plaintiff's counsel had previously worked for many years doing medical malpractice defense work. It is through this work that plaintiff's trial counsel argues that he had developed a professional relationship with the experts.

[2] Defendants do not appear to argue that an expert cannot, under any circumstance, be disqualified because of a conflict of interest. We note that MCL 600.2169 governs expert witnesses in medical-malpractice actions. Although the statute provides criteria for determining the qualifications of experts, MCL 600.2169(3) provides that "[t]his section does not limit the power of the trial court to disqualify an expert witness on grounds other than the qualifications set forth in this section."

questions of law underlying evidentiary rulings. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). The parties agree that these cases present an issue of first impression.

In her motion to strike and in her brief on appeal, plaintiff relies on a two-part test first articulated in *Paul v Rawlings Sporting Goods Co*, 123 FRD 271, 278 (SD Ohio, 1988), which has since been adopted by several federal courts and a handful of states. Although lower federal court decisions are not binding on state courts, they may be persuasive. *Abela v GMC*, 469 Mich 603, 607; 677 NW2d 325 (2004). The same is true for cases from foreign jurisdictions. *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006), lv den 477 Mich 1124 (2007). We are persuaded that, like many other courts, we should adopt the *Paul* test, with the addition of a public-policy element.

"Cases granting disqualification are rare because courts are generally reluctant to disqualify expert witnesses, especially those . . . who possess useful specialized knowledge." *Rhodes v EI Du Pont de Nemours & Co*, 558 F Supp 2d 660, 664 (SD W Va, 2008) (quotation marks and citation omitted; ellipsis in original), aff'd not in relevant part 636 F3d 88 (2011), cert den 565 US 977 (2011). "Accordingly, the party seeking disqualification bears a high standard of proof to show that disqualification is warranted." *Id*. (quotation marks and citations omitted). In what appears to be the first case applying a variation of the test the parties present to this Court, in *Paul*, 123 FRD at 278 (SD Ohio, 1988), United States Magistrate Judge Terence P. Kemp explained:

> Under certain circumstances, it might be reasonable for an attorney or his principal to communicate privileged or confidential matters to an expert witness even in the absence of a formal contractual relationship. On the other hand, there may be situations where, despite the existence of a formal contractual relationship, so little of substance occurs during the course of the relationship that neither the integrity of the trial process, nor the interests of the party who retained the expert, would be served by blanket disqualification. Consequently, I believe the proper focus in such situations is to determine, first, whether the attorney or client acted reasonably in assuming that a confidential or fiduciary relationship of some sort existed and, if so, whether the relationship developed into a matter sufficiently substantial to make disqualification or some other judicial remedy appropriate. Stating each proposition negatively, if any disclosures of privileged or confidential material were undertaken without a reasonable expectation that they would be so maintained (so that, in effect, any confidentiality or privilege relating to the matters communicated was waived), or if, despite the existence of a relationship conducive to such disclosures, no disclosures of any significance were made, it would seem inappropriate for the court to dictate to the expert or his new employer that his participation in the case be limited or eliminated.

In *Koch Refining Co v Jennifer L Boudreaux MV*, 85 F3d 1178, 1181 (CA 5, 1996), the United States Court of Appeals for the Fifth Circuit summarized the state of the law:

> In disqualification cases other than those in which the expert clearly switched sides, lower courts have rejected a "bright-line" rule and have adopted the following test:

> First, was it objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed?
>
> Second, was any confidential or privileged information disclosed by the first party to the expert?

The *Koch* Court explained that "[o]nly if the answers to both questions are affirmative should the witness be disqualified." *Id*. The *Koch* Court also noted that "[m]any lower courts have considered a third element: the public interest in allowing or not allowing an expert to testify." *Id*. The party seeking disqualification bears the burden of proving these elements. *Id*.

Over the years, several federal and state courts have used or adopted the test articulated in *Paul* and *Koch*. In 2020, the Minnesota Court of Appeals, after recounting the development of the law, adopted the test. *Berthiaume v Allianz Life Ins Co of North America*, 946 NW2d 423, 427-429 (Minn Ct App, 2020). The Minnesota Court of Appeals noted that this test has been used by several other federal courts and adopted by state courts in Colorado, Texas, New York, Virginia, and West Virginia.[3] *Id*. at 428.

"In applying the first prong of the test, courts focus on whether the party seeking disqualification acted reasonably in assuming that a confidential or fiduciary relationship existed." *Rhodes*, 558 F Supp 2d at 667 (quotation marks and citation omitted). According to the *Rhodes* Court, courts have examined several factors in evaluating the reasonableness of a party's assumption: (1) whether the relationship was long standing and involved frequent contacts, (2) whether the expert was to be called as a witness in the underlying case, (3) whether the parties entered into a formal confidentiality agreement, (4) whether the expert was retained to assist in the litigation or paid a fee, (5) whether work product was discussed or the party provided documents to the expert, and (6) whether the expert derived any of his specific ideas from work done under the direction of the retaining party. *Id*.; *Hewlett-Packard Co v EMC Corp*, 330 F Supp 2d 1087, 1093 (ND Cal, 2004). The *Rhodes* Court explained that "in cases where the expert met [only] once with counsel, was not retained, was not supplied with specific data relevant to a case, and was not requested to perform any services, courts have declined to find a confidential relationship existed." *Rhodes*, 558 F Supp 2d at 667. In *Hewlett-Packard*, the United States District Court for the Northern District of California explained:

> There likely is a long term relationship when the record supports a longstanding series of interactions, which have more likely than not coalesced to create a basic understanding of [the retaining party's] modus operandi, patterns of operations, decision-making process, and the like." [*Hewlett-Packard*, 330 F Supp 2d at 1093 (quotation marks and citation omitted; alteration in original).]

---

[3] *Berthiaume* involved an attorney serving as an expert. *Berthiaume*, 946 NW2d at 424. Therefore, the court also summarized how some courts differentiate between expert witnesses as a whole and attorneys serving as experts in these types of cases. See *id*. at 426-429.

The *Hewlett-Packard* Court further explained that although "a confidential relationship can exist absent a confidentiality agreement between the retaining party and the expert," "a confidential relationship is not necessarily established just because some information concerning the litigation is shared." *Id*. at 1094 (quotation marks and citations omitted).

As to the second prong, courts "consider whether the expert received or had reasonable access to information and whether that information was confidential." *Rhodes*, 558 F Supp 2d at 667 (quotation marks and citations omitted). Confidential information is information "of particular significance" or information "which can be readily identified as either attorney work product or within the scope of the attorney-client privilege." *Id*. (quotation marks and citations omitted).

> Confidential information in this context includes, among other things: discussions of the [retaining party's] strategies in the litigation, the kinds of experts [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses. The confidential information must also be sufficiently related to the instant litigation to merit disqualification. [*Id*. (quotation marks and citations omitted; alterations in original).]

In witness disqualification cases, courts have emphasized that discussions between counsel and experts do not carry the presumption of confidentiality that accompanies attorney-client communication. *Rawlings*, 123 FRD at 281; *Hewlett-Packard*, 330 F Supp 2d at 1094. The party seeking disqualification must "point to specific and unambiguous disclosures that if revealed would prejudice the party." *Hewlett-Packard*, 330 F Supp 2d at 1094.

Finally, as to public interest considerations, some courts consider factors such as: "preventing conflicts of interest, maintaining the integrity of the judicial process, maintaining accessibility to experts with specialized knowledge, and encouraging experts to pursue their professional calling." *Rhodes*, 558 F Supp 2d at 667-668. The *Rhodes* Court also explained that a "court should also consider whether another expert is available and whether the opposing party will be unduly burdened by having to retain a new expert. *Id*. (quotation marks and citations omitted). The *Koch* Court added that "[c]ourts have also expressed concern that if experts are too easily subjected to disqualification, unscrupulous attorneys and clients may attempt to create an inexpensive relationship with potentially harmful experts solely to keep them from the opposing party." *Koch*, 85 F3d 1183 (citation omitted).[4]

---

[4] Our Supreme Court has held that experts have property rights in their opinions. *Klabunde v Stanley*, 384 Mich 276, 282; 181 NW2d 918 (1970). Defendants also briefly argue that this Court has recognized that a party should be afforded its choice of experts. To advance this argument, defendants cite *Burris v KAM Transp, Inc*, 301 Mich App 482, 487; 836 NW2d 727 (2013). It is unclear to us that this case supports defendants' argument. Plaintiff, however, does not dispute defendants' argument.

Because these cases do not present a "side-switching" issue (when an expert switches sides during the litigation),[5] we adopt the standard first articulated in *Paul*. But we additionally adopt the public interest factors as a third element as a part of the analysis. See *Berthiaume*, 946 NW2d at 428.

Lastly, we note that plaintiff's argument in regard to MCR 2.302(B)(4)(f)[6] appears misplaced and that a connection between this rule and any test this Court adopts is tenuous. Plaintiff argues that the *Paul* (and *Berthiaume*) tests are consistent with this court rule and that our court rules "make it clear that our Supreme Court intended communications between counsel and their retained expert witnesses to be confidential". In advancing this argument, plaintiff acknowledges that MCR 2.302(B)(4)(f) refers to "retained" expert witnesses. But plaintiff never retained the experts at issue in this case, and therefore, the rule does not appear to apply. If she had, the merits of defendants' present appeal would likely be much weaker (and plaintiff's argument as to this court rule more material).

The order of the trial court striking the expert witnesses is vacated and the matter is remanded to the trial court for reconsideration in light of this Court's opinion. We do not retain jurisdiction. No costs, a question of public importance involved.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Douglas B. Shapiro

---

[5] Somewhat ironically, this issue stems from plaintiff's *counsel* switching sides after a long career as a defense counsel.

[6] MCR 2.302 governs discovery generally. MCR 2.302(B)(4)(f) provides as follows:

Subrule (B)(3)(a) protects communications between the party's attorney and any expert witness under subrule (B)(4), regardless of the form of the communications, except to the extent that the communications:

(*i*) relate to compensation for the expert's study or testimony;

(*ii*) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

(*iii*) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.