*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 19, 2019

Plaintiff-Appellee,

v

No. 344158
Oakland Circuit Court
LC No. 2017-264633-FH

MICHAEL ARTHUR FARMAR,

Defendant-Appellant.

Before: CAMERON, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Following a jury trial, defendant Michael Farmar was convicted of second-degree criminal sexual conduct (CSC), MCL 750.520c(1)(a) (sexual contact with person under 13 years of age). The trial court sentenced Farmar as a fourth-offense habitual offender, MCL 769.12, to 6 to 40 years' imprisonment. Farmar appeals his conviction and sentence. We affirm.

This matter arises from Farmar, who was 51 years old at the time, engaging in sexual contact with a 10-year-old girl in a West Bloomfield Kroger store in the early evening of September 17, 2017. The prosecution presented evidence at trial that, while the victim and her mother were shopping, the victim's mother told her to go out to the vehicle to look for a reusable shopping bag. When the victim exited the store, she saw a man later identified as Farmar sitting on a bench outside of the store. Farmar tried to speak to the victim, which scared her. The victim locked herself inside of her mother's vehicle and stayed there until she could no longer see Farmar. The victim then went back into the store and found her mother. The victim's mother noticed that the victim appeared to be "scared," "really nervous," and "freaked out." The victim and her mother continued shopping.

At one point, the victim stopped to look at clearance items, and the victim's mother proceeded down the aisle. The victim testified that, when she was looking at the clearance items, someone "grabbed" her buttocks. When the victim turned around, she saw Farmar "walking away really fast." The victim was "scared" and immediately reported the incident to her mother, who confronted Farmar and reported the incident to store personnel and law enforcement.

-1-

A Kroger manager viewed the surveillance video of the aisle in question. According to the manager, the video showed Farmar "beeline[] over to where" the victim was located in the clearance aisle and then "immediately beeline[] back to the other side of the . . . aisle." The manager noted that the victim "kind of jump[ed] out of the way" and that she looked "very, very upset." Because a sign obscured the view, it could not be determined from the surveillance video whether Farmar actually touched the victim.

Law enforcement was able to determine Farmar's identity, and he was arrested and charged with second-degree CSC. During an interview with law enforcement, Farmar stated that it was possible that he spoke to a young girl at Kroger on the evening in question and that it was possible that he grabbed her buttocks on purpose.

At trial, the defense argued that Farmar's identity had not been established and that the evidence did not establish that he intentionally touched the victim or that any touching was done for a sexual purpose. The jury convicted Farmar as charged. Thereafter, Farmar filed a motion for judgment notwithstanding the verdict and a motion for a new trial. The trial court denied both motions and sentenced Farmar to a term of imprisonment. The instant appeal followed.

## I. SECOND-DEGREE CSC CONVICTION

## A. SUFFICIENCY OF THE EVIDENCE

Farmar first argues that the prosecution failed to present sufficient evidence at trial to prove beyond a reasonable doubt that he engaged in "sexual contact" with the victim. We disagree. We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

"The elements of CSC-II are: "(1) the defendant engaged in sexual contact, (2) with a person under 13 years of age." *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531 (2014), citing MCL 750.520c(1)(a). The statutory definition of "sexual contact" "includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts,[1] if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner . . . ." MCL 750.520a(q). "[W]hen determining whether touching could be reasonably construed as being for a sexual purpose, the conduct should be 'viewed objectively' under a 'reasonable person' standard." *People v DeLeon*, 317 Mich App 714, 719-720; 895 NW2d 577 (2016) (citation and quotation marks omitted). "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind, which

---

[1] " 'Intimate parts' includes the. . . buttock . . . of a human being." MCL 750.520a(f).

can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

When viewing the evidence in a light most favorable to the prosecution, we conclude that there was sufficient evidence to establish that Farmar engaged in sexual contact with the victim for a sexual purpose. During trial, the victim testified that, when she was alone outside of Kroger, Farmar tried to talk to her. The interaction scared the victim, causing her to lock herself inside of her mother's vehicle until she could no longer see Farmar. Subsequently, after the victim went back into to the store, Farmar approached the victim from behind, "grabbed" her buttocks, and walked away. According to the victim's mother, the victim appeared to be frightened after the encounter. Farmar later admitted to a detective that he may have touched the victim's buttocks on purpose and admitted that the touching may have involved him "grabbing," as opposed to brushing against the victim's buttocks. Farmar admitted that such contact was "sick." This evidence was sufficient to permit a rational trier of fact to infer beyond a reasonable doubt that Farmar's touching of the victim's buttocks was both intentional and done for a sexual purpose. In addition, given the evidence that Farmar made a "beeline" toward the victim and that the size of the aisle did not necessitate that he come in close proximity to her, the jury could reasonably have rejected any argument that Farmar may have accidentally brushed up against the victim.

To the extent that Farmar argues that the jury simply should not have believed the prosecution's version of the events, this Court resolves all conflicts of the evidence in favor of the prosecution when the sufficiency of the evidence is challenged. *People v Harrison*, 283 Mich App 374, 377-378; 768 NW2d 98 (2009). We also do not second-guess jury determinations regarding the weight of the evidence or the credibility of the witnesses. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Thus, we defer to the jury's determination that the victim's testimony in this case was credible, especially because the testimony of a victim need not be corroborated in prosecutions for criminal sexual conduct. MCL 750.520h. In light of the victim's testimony regarding the sexual contact, we find that the prosecution presented sufficient evidence to support Farmar's conviction of second-degree CSC.

## B. GREAT WEIGHT OF THE EVIDENCE

In a related claim, Farmar argues that he should receive a new trial because the great weight of the evidence failed to show that he engaged in contact with the victim intentionally and for a sexual purpose. In so arguing, however, Farmar does not provide any meaningful arguments to support this assertion, thereby rendering the argument abandoned. See *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004). Nonetheless, we have reviewed the argument and find that it lacks merit.

We review a trial court's decision to deny a motion for a new trial for an abuse of discretion. *People v Abraham*, 256 Mich App 265, 269; 662 NW2d 836 (2003) (citation omitted). In evaluating whether a verdict is against the great weight of the evidence, the question is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998); *Unger*, 278 Mich App at 232. A verdict may be vacated only when it "does not find reasonable support in the evidence, but is more likely to be attributed to causes outside

the record such as passion, prejudice, sympathy, or some extraneous influence." *People v DeLisle*, 202 Mich App 658, 661; 509 NW2d 885 (1993) (citation omitted). Absent compelling circumstances, the credibility of witnesses is for the jury to determine. See *Lemmon*, 456 Mich at 642-643.

As already discussed, the evidence supports that Farmar's touching of the victim's buttocks was both intentional and for a sexual purpose. Considering the testimony that after attempting to talk to the victim outside, Farmar approached the victim inside the store, altered his pathway to initiate contact with her, and "grabbed" her buttocks before quickly walking away, the evidence does not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand. See *Lemmon*, 456 Mich at 627. Farmar's great-weight argument essentially consists of an attack on the sufficiency of the evidence and an implication that the defense version of what could have happened was more credible. However, it was up to the jury to assess the weight and reliability of the circumstantial evidence. *Id*. at 643-644. Because the jury's verdict is not against the great weight of the evidence, the trial court's decision to deny Farmar's motion for a new trial was not outside the range of reasonable and principled outcomes. See *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007).

## II. ANONYMOUS JURY

Farmar argues that he was denied his right of due process because the trial court used an anonymous jury by referring to the jurors by number rather than by their names throughout voir dire and trial. Again, we disagree.

To properly preserve an issue for appeal, a defendant must timely object in the trial court, even if the right asserted is constitutional in nature. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999). As Farmar acknowledges, he did not timely raise this challenge, leaving this issue unpreserved. Therefore, we apply the plain-error rule, which requires that "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. An error has affected a defendant's substantial rights when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Moreover, "once a defendant satisfies these three requirements, . . . [r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original). A defendant bears the burden of persuasion with respect to prejudice. *Id*. at 763.

A trial court's practice of referring to jurors by number instead of name potentially involves the use of an "anonymous jury," which this Court has defined as "one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). The use of an anonymous jury implicates two interests: "(1) the defendant's interest in being able to conduct a meaningful examination of the jury and (2) the defendant's interest in maintaining the presumption of innocence." *Id*. at 522-523. An anonymous jury is "where something more than just the jurors' names is withheld from the parties" and is only actually implicated if certain biographical information is also withheld. *People v Hanks*, 276 Mich App

-4-

91, 93; 740 NW2d 530 (2007). Ultimately, "[a] challenge to an 'anonymous jury' will only succeed where the record reflects that withholding information precluded meaningful voir dire or that the defendant's presumption of innocence was compromised." *Id.*

In this case, the record does not support Farmar's contention that an actual "anonymous jury" was used. The record discloses that the trial court informed the parties of the court's practice of referring to jurors *on the record* by number rather than by name, and requested that the parties adhere to this procedure. There is no indication that the juror's names were not otherwise available to the parties. During voir dire, the jurors shared biographical information in open court, which included their employment status, marital status, spouses' employment status, and education level. The jurors also divulged whether they had children and the ages of the children. Indeed, Farmar points to no juror information that was withheld from the parties. Further, there is nothing in the record to indicate that the use of numbers undermined Farmar's presumption of innocence. In other words, there is no indication that the jurors believed there was any significance to the use of numbers on the record, rather than names. Thus, there was no implication that Farmar was generally dangerous or guilty. Also, the trial court instructed the jury before voir dire and again after closing arguments that Farmar was presumed innocent. Jurors are presumed to follow their instructions. See *People v Bauder*, 269 Mich App 174, 190; 712 NW2d 506 (2005). In sum, the record does not support that any juror information was withheld from the parties or that the trial court's practice of referring to the jurors by numbers, rather than names, compromised Farmar's presumption of innocence or precluded meaningful voir dire. Consequently, Farmar has not demonstrated plain error.[2] See *Carines*, 460 Mich at 763.

Moreover, given that the record contains overwhelming evidence of Farmar's guilt, we fail to see how he would be able to establish that his substantial rights were affected by the trial court's practice of referring to prospective jurors by jury numbers. See *id.*

### III. FARMAR'S STANDARD 4 BRIEF

In a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Farmar raises additional issues challenging the denial of his right to a polygraph examination, the effectiveness of defense counsel's assistance, and his sentence. We conclude that none of these issues have merit.

---

[2] Farmar argues on appeal that empaneling an anonymous jury should be considered a structural error or that trial courts should be required to justify the use of an anonymous jury. However, Farmar relies on multiple out-of-jurisdiction cases to make these arguments, which are neither binding nor persuasive on this Court. See *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006).

## A. RIGHT TO A POLYGRAPH EXAMINATION

Farmar first argues that he was denied his due process right to a polygraph examination. However, he did not raise this argument below. Therefore, we review the unpreserved claim for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

At Farmar's request, a polygraph examination was scheduled after he was charged with second-degree CSC. Following a pre-examination interview, the interviewer determined that Farmar was not a suitable candidate for a polygraph examination and declined to proceed with the examination. The polygraph examiner's report states, in relevant part, the following:

> I asked him if it was possible that the back of his hand brushed up against the 10 year old's butt and he said that was possible.

> I asked him if it was possible that the front of his hand brushed up against the 10 year old's butt and he said that was possible.

> I asked him if it was possible that she felt like he grabbed her butt and he said that was possible. But he added that it would not have been on purpose.

> I explained to him that the video showed that he went directly to her. I asked him if it was possible that he purposely grabbed her butt. Farmer said that it was possible and that it's sick. . . .

> Upon completion of the pretest interview, this examiner determined the examinee not to be suitable for the polygraph technique due to his admissions.

MCL 776.21(5) provides that "[a] defendant who allegedly has committed" CSC "shall be given a polygraph examination or lie detector test if the defendant requests it." Thus, under MCL 776.21(5), a defendant has an "absolute right to receive a polygraph test once he ma[kes] a request for it." *People v Rogers*, 140 Mich App 576, 579; 364 NW2d 748 (1985). Because Farmar asserted his statutory right to a polygraph test under MCL 776.21(5) but was not given a polygraph test, plain error occurred. Nonetheless, Farmar is not entitled to relief because he has not shown that the failure to administer a polygraph examination affected his substantial rights, i.e., affected the outcome of the proceedings.

The purpose of MCL 776.21(5) is to assist in the investigation of crimes and possibly avoid the need for a trial, not to develop evidence to use at a trial. See *People v Phillips*, 469 Mich 390, 395 n 3; 666 NW2d 657 (2003); *People v Wilkens*, 267 Mich App 728, 735; 705 NW2d 728 (2005). Thus, the results of a polygraph test, no matter what they might be, are not admissible at trial. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). According to the Polygraph Examination Report, the examiner determined that Farmar was "not . . . suitable for the polygraph technique" because of the statements he made during the prepolygraph interview, and the examiner summarized Farmar's incriminating statements in the report. When discussing a different matter, the prosecutor stated that, in her opinion, Farmar's statements during the prepolygraph interview were "admissions." Because of the inculpatory nature of Farmar's statements, there is no basis for concluding that the prosecution would have exercised its discretion to dismiss the charge if an examination had been conducted and indicated that

Farmar's statements were truthful. Accordingly, Farmar has not shown that the failure to administer a polygraph examination was outcome-determinative error. See *Carines*, 460 Mich at 763.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Farmar argues that he is entitled to a new trial because defense counsel provided ineffective assistance for multiple reasons, each of which we will address below. Farmar failed to raise an ineffective assistance of counsel claim in the trial court in connection with a motion for a new trial, and this Court denied Farmar's motion to remand for a *Ginther*[3] hearing. Therefore, our review of this issue is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

The effective assistance of counsel is presumed, and the burden is on the defendant to establish otherwise. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002) (citation omitted); *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012) (citation omitted). "[A] reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *Id*. at 22-23. "A defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

## 1. FAILURE TO INVESTIGATE AND FILE A NOTICE OF AN INSANITY DEFENSE

Farmar argues that trial counsel was ineffective for failing to failing to pursue an insanity defense. We disagree.

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *Id*. (quotation marks and citation omitted.) "Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (citation and quotation marks omitted).

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Counsel is ineffective for failing to properly prepare a meritorious insanity defense if the failure deprives the defendant of a reasonably likely chance of acquittal. *People v Hunt*, 170 Mich App 1, 13; 427 NW2d 907 (1988). Counsel is not, however, ineffective for failing to advance a meritless position. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

The test for criminal insanity is set forth in MCL 768.21a(1), which provides, in pertinent part:

> An individual is legally insane if, as a result of mental illness as defined in section 400 of the mental health code, . . . that person lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law. Mental illness . . . does not otherwise constitute a defense of legal insanity.

MCL 330.1400(g) defines "mental illness" as "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." "Mental illness . . . does not otherwise constitute a defense of legal insanity." MCL 768.21a(1). "The defendant has the burden of proving the defense of insanity by a preponderance of the evidence." MCL 768.21a(3).

Farmar has not overcome the strong presumption that trial counsel's performance was within the range of reasonable professional conduct. The record indicates that trial counsel filed a motion for evaluation of competency soon after the Farmar was arraigned. As a result of counsel's motion, the trial court ordered Farmar to be evaluated for criminal responsibility at the Center for Forensic Psychology ("CFP"). The examiner concluded that Farmar was criminally responsible; thus, Farmar's mental status did not meet the requirements for legal insanity. Farmar has not presented an appropriate offer of proof to refute the CFP findings, or to otherwise show that he was legally insane at the time of the offense. Thus, Farmar has not demonstrated that counsel's decision to forego an insanity defense, which was made after an appropriate investigation of Farmar's criminal responsibility, was objectively unreasonable.

Further, absent an appropriate offer of proof, Farmar is unable to establish that he was prejudiced in this regard. Farmar attempts to establish the factual predicate for his claim with his own affidavit, in which he avers that he has been diagnosed with various "mental health disorders," "has a mental health history," and has been on psychotropic medications since 2008. However, because this evidence was not presented before the trial court, we cannot consider it because it is "impermissible to expand the record on appeal." *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999). Further, even considering Farmar's assertion that he suffered from "a mental illness," a defendant does not establish the affirmative defense of insanity by merely establishing that he suffers from mental illness. MCL 768.21a(1). Thus, Farmar's mere allegation of mental illness does not establish the factual predicate for his claim. See *Douglas*, 496 Mich at 592. Because the record discloses that the viability of an insanity defense was investigated before trial, and that there was no evidence to support that defense, Farmar has not established that trial counsel was ineffective for not advancing an insanity defense at trial. See *Ericksen*, 288 Mich App at 201.

## 2. FAILURE TO CALL A DEFENSE EXPERT

Farmar argues that trial counsel was ineffective because he failed to request that an expert be appointed to explain the side effects of certain psychotropic medications.[4] "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). A defense counsel's failure to present a witness can constitute ineffective assistance only where it "deprives the defendant of a substantial defense." *Id*.

Farmar has not made an offer of proof regarding the substance of any favorable testimony that a defense expert on psychotropic medications could have offered. There is no evidence that an expert would have supported any defense theory or concluded that Farmar's ingestion of medications rendered him legally insane at the time of the offense. Farmar's mere speculation—based on some lists of possible side effects of his medications—that an expert could have provided favorable testimony is insufficient to show that trial counsel's failure to call an expert was objectively unreasonable, or to show that there is a reasonable probability that the outcome of trial would have been different if an expert had been called. *Id*. Therefore, Farmar has not overcome the strong presumption that trial counsel provided constitutionally effective assistance.

## 3. FAILURE TO FILE A MOTION FOR A POLYGRAPH EXAMINATION

Next, Farmar faults trial counsel for failing to file a motion to enforce his right to a polygraph examination. Even if we were to conclude that it was objectively unreasonable for counsel not to request that Farmar's right to take a polygraph examination be enforced, Farmar has not demonstrated that he was prejudiced by counsel's failure in this regard. As already discussed, because Farmar's statements during the prepolygraph interview were inculpatory, there is no reasonable probability that the prosecutor would have elected not to proceed to trial if a polygraph examination had been taken and revealed that Farmar's statements were truthful. Thus, Farmar has not established that trial counsel was ineffective for not advancing his right to a polygraph examination. See *Nix*, 301 Mich App at 207.

## 4. FAILURE TO PURSUE A DEFENSE OF TEMPORARY INSANITY

Farmar makes an additional cursory complaint, without any meaningful analysis, that trial counsel should have pursued a defense of "temporary insanity of pathological involuntary intoxication." "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "The failure to brief the merits of an allegation of error constitutes an

---

[4] Farmar also argues that trial counsel was ineffective for failing to file a "motion for expert witness on identification." However, this argument consists of one sentence and is not accompanied by authority or meaningful argument. Thus, the argument is abandoned, and we will not consider it. See *McPherson*, 263 Mich App at 136 ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue.").

abandonment of the issue." *McPherson*, 263 Mich App at 136. Consequently, this ineffective-assistance claim has been abandoned. *Id*.

### 5. MOTION TO REMAND FOR A *GINTHER* HEARING

Farmar alternatively requests a remand for a *Ginther* hearing. This Court denied Farmar's earlier motion to remand,[5] and Farmar has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective. Therefore, we again deny Farmar's request for a remand. *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007), citing MCR 7.211(C)(1)(a).

### C. SENTENCE

Farmar argues that the trial court erred when it sentenced him as a fourth-offense habitual offender under MCL 769.12 because neither he nor defense counsel were ever given notice of the prosecution's intent to seek sentence enhancement as required by MCL 769.13. Because Farmar did not raise this claim below, we review the issue for plain error affecting his substantial rights. *Carines*, 460 Mich at 763.

MCL 769.12 provides that a person who has been previously convicted of three or more felonies shall be subject to an enhanced sentence if convicted of a subsequent felony. To enhance the sentence of a defendant, the prosecutor must file a written notice of intent within 21 days after the defendant's arraignment on the information charging the underlying offense. MCL 769.13(1). The notice must be filed with the court and "*be personally served upon the defendant or his or her attorney at the arraignment*" or in any manner provided by law or court rule. MCL 769.13(2) (emphasis added). The purpose of MCL 769.13 is to ensure that a defendant has notice at an early stage in the proceedings that his sentence is subject to enhancement. *People v Morales*, 240 Mich App 571, 582; 618 NW2d 10 (2000).

The register of actions indicates that a notice of intent to seek enhancement of Farmar's sentence as a fourth-offense habitual offender was filed with the trial court on October 5, 2017, which was six days before Farmar's arraignment. Thereafter, at the October 11 arraignment, the following exchange occurred on the record:

> *Defense Counsel*: Acknowledge receipt of the general information and the notice of intent to seek sentence enhancement fourth.
>
> *The Court*: Oh, there is a habitual fourth?
>
> *Prosecutor*: There is, your Honor.

---

[5] On April 17, 2019, Farmar's motion to remand for a *Ginther* hearing was denied "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Farmar*, unpublished order of the Court of Appeals, entered April 17, 2019 (Docket No. 344158).

Subsequently, at an October 18, 2017 pretrial hearing, defense counsel acknowledged receipt "of the underlying and habitual informations." Thus, because the record does not support Farmar's claim that the prosecution failed to provide timely notice of its intent to seek sentence enhancement, he has failed to establish plain error. See *Carines*, 460 Mich at 763.

Finally, Farmar appears to argue that the trial court improperly sentenced him to a prison term of 6 to 40 years because the maximum sentence of 40 years exceeded the statutory maximum outlined in MCL 750.520c.[6] Normally, the statutory maximum for the offense of second-degree CSC is 15 years. MCL 750.520c(2)(a). However, Farmar was properly sentenced as a fourth-habitual offender, MCL 769.12, which elevated the statutory 15-year maximum to life. Specifically, MCL 769.12(1)(b) provides that if the base offense normally is punishable by a maximum term of five years or more, then "the court . . . may sentence the person to imprisonment for life or for a lesser term." Therefore, the imposed sentence did not run afoul of any legislative maximum.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro

---

[6] Farmar argues that the trial court "resentenced him." For purposes of clarification, we note that, at the sentencing hearing on May 23, 2018, the trial court sentenced Farmar to a prison term of 6 to 40 years and issued a judgment of sentence, which included the notation that Farmar's "sentence [was] enhanced pursuant to MCL 769.13 (4th)." At the May 23, 2018 sentencing hearing, the trial court did not expressly determine Farmar's status as a habitual offender prior to imposing the sentence. See MCL 769.13(5). On May 30, 2018, Farmar again appeared before the trial court. According to the register of actions, Farmar pleaded "guilty to hab 4" at that time. The trial court then issued an amended judgment of sentence. The amended judgment of sentence did not alter Farmar's sentence and included the same notation that Farmar's "sentence [was] enhanced pursuant to MCL 769.13 (4th)." The only difference between the original judgment of sentence and the amended judgment of sentence is that the amended judgment indicated that it was "amended to reflect Habitual 4th or subsequent offense."