## MASSENGILE *v.* PIPER.

Animals—Dog—Scienter—Question for Jury.

In action for injuries because of dog bite, evidence presented question for jury as to whether or not defendants knew or had reasonable grounds to believe that their chow dog had vicious propensities.

Sharpe, Chandler, and North, JJ., dissenting.

Appeal from Wayne; Cramton (Louis C.), J., presiding. Submitted June 5, 1940. (Docket No. 38, Calendar No. 41,162.) Decided October 7, 1940.

Case by Mattie Massengile against Frank S. Piper and wife for personal injuries sustained when bitten by defendants' dog. Verdict for plaintiff. Judgment for defendants *non obstante veredicto*. Plaintiff appeals. Reversed and judgment ordered entered on the verdict.

· *Nedwin L. Smokler* (*Leonard J. Grabow*, of counsel), for plaintiff.

*Hesse & Littell* (*John B. Poole*, of counsel), for defendants.

SHARPE, J. .(*dissenting*). This is an appeal from a judgment entered notwithstanding a verdict rendered by a jury in favor of plaintiff. The action is for damages for personal injuries inflicted upon her by a chow dog kept and owned by defendants who are husband and wife.

The material facts are not in dispute. Plaintiff was employed by defendants in their home doing laundry and general housework. She worked one or two days a week, arriving about 8 a.m. and leaving about 4:30 p.m. On June 8, 1937, Mrs. Piper informed plaintiff that she was going away and would not return until after plaintiff left for the day. She instructed plaintiff to open the gate to an enclosure where the dog was confined and to let him into the house. About 4 p.m., in accordance with the instructions given her, plaintiff went to the enclosure and, as she came to the gate, the dog ran up on the gate and then ran to the back of the enclosure. Plaintiff returned to the house and went back a second time; and when plaintiff opened the gate the dog immediately jumped upon her and knocked her down, severely biting her arms and hands. The attack lasted about two minutes, when a neighbor came to her rescue. When the cause came on for trial, testimony was introduced that plaintiff had been in the employ of defendants for a period of about six months; that plaintiff did not provoke the attack; that the dog weighed about 40 or 50 pounds, was about 13 months old at the time plaintiff received her injuries, and had been kept

by defendants since he was two months old. It also appears that when plaintiff came to work through the back door of defendants' house, the dog would bark and growl at her. At such times Mrs. Piper would hold on to the dog and quiet him down. The dog was kept in an enclosure 20 by 27 feet, but at night was kept in the house.

Plaintiff appeals and contends that there was evidence of *scienter* in the case. In deciding this case we have in mind that plaintiff is entitled to have her evidence given the most favorable construction it will bear and to have the benefit of every fair inference that may be drawn from the evidence, guided by sound processes of reasoning and applicable principles of law, *Frebes* v. *Railroad Co.*, 218 Mich. 367; and that Act No. 73, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 9077-1, Stat. Ann. 1940 Cum. Supp. § 12.544), dispensing with the necessity of proof of *scienter* in actions arising out of dog bites, has no application to the facts in the case at bar.

The language used in the recent case of *Grummel* v. *Decker, ante,* 71, is applicable to the facts herein involved. In that case we said:

"In all cases arising under the common law, it is necessary for plaintiff to aver and prove *scienter.* That is, that the dog owned by the defendants was of a dangerous character and that the defendants knew it.

" '*Scienter* is not a word of mystery, or magic meaning. It is merely an expressive word retained from the old Latin forms of pleading signifying in the connection commonly used that the alleged crime or tort was done designedly, understandingly, knowingly, or with guilty knowledge. If necessary to affirmatively negative the supposition of ignorant innocence under the facts alleged in this information, *scienter* is plainly apparent.' *People* v. *Gould,* 237 Mich. 156.

"It is a term used in pleading to signify an allegation setting out the defendant's previous knowledge of a state of facts which it was his duty to guard

against, and his omission to do which has led to the injury complained of. 56 C. J. p. 863.''

The testimony offered by plaintiff in proof of *scienter* was that upon one occasion when she came to the door of defendants' residence the dog was jumping and barking; that upon another occasion the dog growled when she came to the door; that at another time Mrs. Piper told her that the dog was giving them trouble; and that the dog was a watch dog.

Upon cross-examination, plaintiff testified as follows:

"*Q.* Had Togo (the dog) ever jumped up on you before?

"*A.* No, he never had.

"*Q.* Had he ever molested you or harmed you in any way before?

"*A.* No.

"*Q.* Never had. * * * Did you ever know of him molesting or harming anyone else?

"*A.* No.

"*Q.* You never did?

"*A.* No.''

The trial court made the following finding of facts:

"He was never tied up in the house. He had the run of the house, when this maid was there as well as others. Whoever was there, the dog had the run of the house. He could contact, at will, anyone in the premises.

"During the daytime, for the good of the dog, he was kept outside, and because he was, according to the testimony, destructive to rose bushes, he was confined within a smaller area.

"During all this time that the dog was in the house, and the maid was in the house—a day a week for a month, and then for several months two days a week—doing work about the house, both when the

lady of the house was there, and when she was not, there is no testimony of the plaintiff that this dog ever alarmed her in any way, even by his being around, being together, and for these barks and growls that accompanied her admission to the house; but, no testimony that that ever occurred afterwards.

"The testimony of the plaintiff herself is Togo never jumped up or harmed her. She never knew of his harming or molesting any one else. And that is after several months' contact with him. She had the opportunity to observe the arrival of the people at the house, tradesmen, callers."

An examination of the record discloses that there is no positive or affirmative proof of *scienter,* but plaintiff contends that the defendants should be charged with notice because of the fact that their dog was of the chow breed and as such was an animal with an established viciousness. In support of this theory, evidence was introduced that the chow breed have a tendency to be vicious, temperamental, undependable, and treacherous.

The law upon the subject of the liability of the keepers of dogs is not in dispute.

In *Kennett* v. *Engle,* 105 Mich. 693, we said:

"It is undoubtedly the law—and the charge of the court so laid it down—that, in addition to the facts of the injury to the plaintiff from the bite of the dog, it was incumbent upon the plaintiff to prove that the dog had on previous occasions manifested a vicious disposition, indicating a disposition to bite mankind, and that the defendant had knowledge or notice of the fact."

In *Andrews* v. *Smith,* 324 Pa. 455 (188 Atl. 146), the court said:

"Animals such as horses, oxen, and dogs are not beasts that are *ferae natura, i.e.,* wild beasts, but are

classed as *mansuetae natura, i.e.,* tamed and domesticated animals, and their owners are not responsible for any vicious acts of theirs unless the owners have knowledge that they are likely to break away from their normal domestic nature and become vicious. Of all animals, dogs have probably been the longest domesticated and the vast majority of them can be allowed their freedom without imperiling the public safety."

We approve the rule stated in *Domm* v. *Hollenbeck,* 259 Ill. 382, 385 (102 N. E. 782, Ann. Cas. 1914 B, 1272), where the court said:

"The owner of an animal is bound to take notice of the general propensities of the class to which it belongs, but he is under no obligation to guard against injuries which he has no reason to expect on account of some disposition of the individual animal different from the species generally, unless he has notice of such disposition. The owner or keeper of a domestic animal of a species not inclined to mischief, such as dogs, horses and oxen, is not liable for any injury committed by it to the person of another, unless it be shown that the animal had a mischievous propensity to commit such an injury and the owner had notice of it or that the injury was attributable to some other neglect on his part.  *  *  *  The natural presumption from the habits of dogs is that they are tame, docile and harmless, both as to persons and property, and the owner of a dog is not liable for damages resulting from the vicious or mischievous acts of the animal unless he had knowledge of his mischievous or vicious propensities, and such knowledge must be proved.  (1 Thompson on Negligence, § 881.)"

In our opinion the testimony as to the characteristics of the breed of chow dogs together with other evidence submitted considered in the light of what plaintiff must establish is so incomplete that a ver-

dict rendered upon the same would be the result of conjecture.

We are constrained to affirm the holding of the trial court. Defendants should recover costs.

CHANDLER and NORTH, JJ., concurred with SHARPE, J.

McALLISTER, J. I am of the opinion that the question of whether defendants had knowledge of the vicious propensities of their dog was for the jury. There was considerable evidence that the dog manifested a savage disposition. Although plaintiff was a servant in the home, the dog repeatedly growled whenever she came to work. When Mrs. Piper would go to the door to let the plaintiff into the house, it would be necessary to hold the dog to quiet him. There was testimony that when other persons came to the door, it would be necessary to grab the dog and hold him in order to keep him from jumping at such visitors. When plaintiff was attacked by the dog, a neighbor, William Dawe, rushed over to the house and found that plaintiff had been severely bitten and was lying on the floor and the dog was standing above her and growling. Plaintiff testified that she had a conversation with defendant Florence Piper before the accident and that Mrs. Piper had told her that she had previously had a very good maid in her employ, but that she could not keep her on account of the dog and that they did not think that they could keep him because of the trouble he was giving them. There was further testimony by Dr. Kline, a practicing veterinary surgeon, that dogs of the chow breed, by general nature and character, have a tendency to be vicious and that such breed is temperamental, undependable, and treacherous. Dr. Taylor, a veterinarian, called as a witness by

defendants, stated that in his practice in the handling of a dog of the chow breed, there was a strong likelihood that, if he approached such a dog in his regular duties "without first making up to him," he might be bitten. Mr. Schuman, who had been engaged in the business of caring for dogs for a period of 32 years and who maintained a large kennel, boarding a number of chow dogs, testified that the chow breed was not reliable, had a bad and untrustworthy disposition; that they are apt to bite or snap at persons; and that, even after making up with one, he would not turn his back on it. Under the evidence above recited, it was a question for the jury to determine whether defendants knew or had reasonable grounds to believe that the dog in question had vicious propensities.

The judgment *non obstante veredicto* should be set aside and a judgment entered in accordance with the verdict of the jury, with costs to plaintiff.

BOYLES and BUTZEL, JJ., concurred with Mc-ALLISTER, J.

WIEST, J. *(concurring)*. I concur in the opinion of Mr. Justice McALLISTER.

Knowledge of viciousness of a dog does not necessarily await a first bite.

BUSHNELL, C. J., did not sit.