*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MOHAMED AHMED,

        Plaintiff-Appellee,

and

NORTHLAND RADIOLOGY, INC.,

        Intervening Plaintiff,

v

TOKIO MARINE AMERICA INSURANCE COMPANY,

        Defendant-Appellant,

and

ALI AHMED,

        Defendant.

FOR PUBLICATION
April 22, 2021
9:00 a.m.

No. 352418
Macomb Circuit Court
LC No. 2018-004076-NI

Before: TUKEL, P.J., and JANSEN and CAMERON, JJ.

TUKEL, P.J.

-1-

In this no-fault action, defendant[1] appeals by leave granted[2] the trial court's order denying its motion for summary disposition. Defendant argues that the trial court erred by concluding that there was a dispute of material fact regarding whether plaintiff, who had no valid driver's license, was barred by MCL 500.3113(a) from eligibility for personal protection insurance (PIP) benefits under the applicable insurance policy. MCL 500.3113(a) bars such eligibility if the motor vehicle is "taken unlawfully" and the person "knew or should have known" of the unlawful nature of the taking. The "knew or should have known" language was added by 2014 PA 489, and has not been addressed by our Supreme Court or this Court in a published opinion. We agree that because plaintiff was not a licensed driver, defendant has satisfied the standard for summary disposition. The rental agreement in this case provided that only a licensed driver was authorized to use, operate or drive the motor vehicle. As a result, plaintiff's taking of the vehicle was in violation of MCL 750.414, and thus was unlawful; and plaintiff should have known of the unlawful nature of the taking. We thus reverse the order of the trial court denying defendant's motion for summary disposition and remand with instructions that the trial court enter an order of summary disposition in favor of defendant.

## I. UNDERLYING FACTS

This case arises from a car accident in which plaintiff was driving a rental car owned by Meade Lexus of Lakeside. Plaintiff's wife, Ala Hagran, had rented the vehicle shortly before the accident. When Hagran rented the vehicle, the terms of the rental agreement were explained to her, including that only "Authorized Drivers" could operate the rental vehicle, and that in order to be an "Authorized Driver" an individual needed to be a validly licensed driver. Plaintiff accompanied Hagran when she rented the vehicle, but he was not a party to the rental agreement; indeed, plaintiff testified at his deposition that he never read the rental agreement. Plaintiff did not have a driver's license at the time the accident occurred because it had been revoked in 2015, almost four years before the accident at issue here. Plaintiff testified at his deposition, however, that he had believed his license was merely restricted and that he was driving within the terms of the restrictions at the time of the accident.

Paragraph 1 of the rental agreement, entitled "Authorized Drivers," provided that the vehicle was to be "used, operated, or driven only by an Authorized Driver." The agreement defined the term "Authorized Driver" as: "(a) the Customer; (b) any person listed by us on P. 1 as an Additional Driver; (c) the customer's spouse;" and two other circumstances which could have

---

[1] There were four parties to this case below: (1) plaintiff, Mohamed Ahmed (plaintiff); (2) intervening plaintiff, Northland Radiology, Inc. (Northland); (3) defendant, Tokio Marine America Insurance Company (defendant); and (4) defendant, Ali Ahmed (Ahmed), the driver of the other vehicle. The trial court dismissed Northland's intervening complaint with prejudice and granted Ali Ahmed's motion for summary disposition. Plaintiff and defendant Tokio Marine are the only two parties remaining on appeal.

[2] *Ahmed v Tokio Marine America Ins Co*, unpublished order of the Court of Appeals, entered May 6, 2020 (Docket No. 352418).

no applicability here. Following the five categories of Authorized Drivers, Paragraph 1 concluded "PROVIDED THAT each such person is a licensed driver and is at least age 18."

Plaintiff filed a complaint after defendant denied his claim for PIP benefits. Defendant eventually moved for summary disposition under MCR 2.116(C)(10), arguing that MCL 500.3113(a) disqualified plaintiff from receiving PIP benefits because he unlawfully took the vehicle by driving it without a driver's license. Defendant responded and disagreed, arguing that defendant could not demonstrate that plaintiff knew he was an unlicensed driver when the accident occurred or that he was expressly prohibited from taking the vehicle. The trial court denied defendant's motion for summary disposition because it concluded that a dispute of material fact existed regarding whether plaintiff knew that he did not qualify as an authorized driver and that his license had been revoked. This appeal followed.

## II. STANDARD OF REVIEW

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a complaint and is reviewed de novo. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Barnes v 21st Century Premier Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347120); slip op at 4. Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Patrick*, 322 Mich App at 605. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "Only the substantively admissible evidence actually proffered may be considered." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016). Finally, "[w]e review de novo questions of statutory interpretation." *Hayford v Hayford*, 279 Mich App 324, 325-326; 760 NW2d 503 (2008).

## III. ANALYSIS

### A. PRINCIPLES OF STATUTORY INTERPRETATION

This Court and the Michigan Supreme Court have described the rules of statutory construction as follows:

> The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. In reviewing the statute's

language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. [*PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 506; 778 NW2d 282 (2009), quoting *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001).]

"A provision of a statute is ambiguous only if it irreconcilably conflicts with another provision or is equally susceptible to more than a single meaning." *In re AGD*, 327 Mich App 332, 343; 933 NW2d 751 (2019). "Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *In re Smith Estate*, 252 Mich App 120, 124; 651 NW2d 153 (2002). Nonetheless, "technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." MCL 8.3a.

Finally, statutes that address similar subject matters should be read together as one law:

Statutes that relate to the same subject or that share a common purpose are *in pari materia* and must be read together as one law, even if they contain no reference to one another and were enacted on different dates. The object of the *in pari materia* rule is to give effect to the legislative intent expressed in harmonious statutes. If statutes lend themselves to a construction that avoids conflict, that construction should control. [*In re AGD*, 327 Mich App at 344 (quotation marks and citations omitted).]

Furthermore,

When two statutes are *in pari materia* but conflict with one another on a particular issue, the more specific statute must control over the more general statute. The rules of statutory construction also provide that a more recently enacted law has precedence over the older statute. This rule is particularly persuasive when one statute is both the more specific and the more recent. [*Parise v Detroit Entertainment, LLC*, 295 Mich App 25, 27-28; 811 NW2d 98 (2011) (citations, quotation marks, and brackets omitted).]

B. MCL 500.3113(a)

"The no-fault act permits an insurer to avoid coverage of PIP benefits under certain enumerated circumstances," such as those listed in MCL 500.3113. *Meemic Ins Co v Fortson*, 506 Mich 287, 303; ___ NW2d ___ (2020) (Docket No. 158302). MCL 500.3113(a) provides that:

A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

(a) The person was willingly operating or willingly using a motor vehicle or motorcycle that was taken unlawfully, and the person knew or should have known that the motor vehicle or motorcycle was taken unlawfully.

The current version of MCL 500.3113(a) dates from 2014.[3]  The previous version provided:

> A person is not entitled to be paid [PIP] benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> (a) The person was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle.  [*Spectrum Health Hospitals v. Farm Bureau Mut. Ins. Co. of Michigan*, 492 Mich. 503, 516; 821 N.W.2d 117 (2012).][4]

The present act thus broadened the provision governing disqualification from eligibility for benefits.  The statute no longer disqualifies only a person who personally took a motor vehicle unlawfully; under current law, the disqualification applies to any person (1) "willingly operating or willing using" a motor vehicle or motorcycle, that (2) was unlawfully taken by someone, and (3) the person seeking benefits "knew or should have known" that the motor vehicle was taken unlawfully.  Despite the change in the language of § 3113(a) and the elimination of the Safe Harbor provision, the meaning of the key term, "taken unlawfully," has the same meaning under the present version as under the old version.  That is because "The provisions of any law or statute which is re-enacted, amended or revised, so far as they are the same as those of prior laws, shall be construed as a continuation of such laws and not as new enactments."  MCL 8.3u.

### C.  "UNLAWFUL" TAKING UNDER MCL 750.414

As used in MCL 500.3113(a), the word "unlawfully" means contrary to the criminal law, for example any violation of the Michigan Penal Code: "The word 'unlawful' commonly means 'not lawful; contrary to law; illegal,' and the word 'take' is commonly understood as 'to get into one's hands or possession by voluntary action.'  When the words are considered together, the plain meaning of the phrase 'taken unlawfully' readily embraces a situation in which an individual gains possession of a vehicle contrary to Michigan law."  *Spectrum Health*, 492 Mich at 516-517.[5]

---

[3] MCL 500.3113, as amended by 2014 PA 489.  MCL 500.3113(a) has not been changed since the 2014 amendment, although it has been reenacted twice in identical form.  See 2016 PA 346; 2019 PA 21.

[4] In *Auto Club Ins Ass'n v Great Am Ins Group*, 800 F Supp 2d 877, 884 (ED Mich, 2011), the Court adopted the term "Safe Harbor provision," which had been suggested by the parties, to refer to the provision that precluded disqualification for benefits if the plaintiff "reasonably believed that he or she was entitled to take and use the vehicle."  As that is an apt and useful shorthand, we use it to refer to that former provision of law.  The Safe Harbor provision was eliminated by 2014 PA 489, which substituted instead a scienter requirement under which a person is disqualified from eligibility for benefits if he or she "knew or should have known" that a taking of a motor vehicle was unlawful.

[5] Thus, as *Spectrum Health* noted generally, any violation of the criminal law which leads to a taking of a motor vehicle will constitute an "unlawful taking" for purposes of MCL 500.3113(a).

"Because a taking does not have to be larcenous to be unlawful, the phrase 'taken unlawfully' in MCL 500.3113(a) applies to *anyone* who takes a vehicle without the authority of the owner, regardless of whether that person intended to steal it." *Id.* at 518. Thus, "any person who takes a vehicle contrary to a provision of the Michigan Penal Code—including MCL 750.413 and MCL 750.414, informally known as the 'joyriding' statutes—has taken the vehicle unlawfully within the meaning of MCL 500.3113(a)." *Rambin v Allstate Insurance Co*, 492 Mich 503, 537; 821 N.W.2d 117 (2014). "[F]or purposes of MCL 500.3113(a), a vehicle is 'unlawfully taken' if it is taken without the authority of its owner,' " *Spectrum Health*, 492 Mich at 518 n 25, and thus "requires a threshold determination that a vehicle was 'unlawfully taken' from its *owner*." *Id.* Thus, MCL 500.3113(a) "examines the legality of a taking from the perspective of the driver." *Id.* at 522; *Rambin*, 495 Mich 323 n 7.

### D. STANDARDS APPLICABLE TO MCL 750.414

MCL 750.414 contains a mens rea requirement; in other words, "it properly requires a showing of knowingly taking without authority or knowingly using without authority." *Rambin*, 495 Mich at 332.[6] "For a person to take personal property without the authority of the actual owner, there must be some evidence to support the proposition that the person from whom he or she received the property did not have the right to control or command the property." *Id.* at 332. In *Rambin*, although by the time of the litigation it was undisputed that the motorcycle involved was owned by Scott Hertzog and had been stolen, the plaintiff maintained that he had been given authority to use the motorcycle by Andre Smith and that it reasonably appeared to him at that time that Smith was the owner. *Id.* at 322-323. In addition, at the time of the *Rambin* litigation, MCL 500.3113(a) contained the Safe Harbor provision. See n 4 of this opinion. Our Supreme Court held that "plaintiff may present evidence to establish that he did not run afoul of MCL 750.414, and thus did not unlawfully take the motorcycle under MCL 500.3113, because he did not knowingly lack authority to take the motorcycle because he believed that he had authority to do so." *Id.* at 333. "Stated differently, plaintiff's argument that he did not unlawfully take the

---

492 Mich at 517; see also *Monaco v Home-Owners Ins Co*, 317 Mich App 738, 749; 896 NW2d 32 (2016) (considering unlawful taking under a criminal provision of the Motor Vehicle Code, MCL 257.1 *et seq.*). *Spectrum Health* made reference to a violation of the Michigan Penal Code as constituting "unlawful" behavior for purposes of the statute, and, responding to the dissent in that case, stated that "in this context, the term 'unlawful' can only refer to the Michigan Penal Code.' " As used in *Spectrum Health*, the phrase "in this context" was not referring generally to MCL 500.3113(a) but rather to the particular illegality at issue in the case, joyriding. See 492 Mich at 517-518 (discussing "joyriding" offenses created by the Michigan Penal Code). The Motor Vehicle Code defines criminal offenses as well, and violations of its provisions also constitute illegal conduct. See *Spectrum Health*, 492 Mich at 516-517 (defining "unlawful" as "illegal."); MCL 257.901 (defining most violations of the Motor Vehicle Code as misdemeanors punishable by up to 90 days incarceration and a $100 fine).

[6] " 'Mens rea' " is defined as " 'criminal intent.' " See *People v Carpenter*, 464 Mich. 223, 246 n 7; 627 NW2d 276 (2001) (KELLY, J., dissenting) (citing *Black's Law Dictionary*, (6th ed). Mens rea thus is the correct term to refer to the mental state element of MCL 750.414, a criminal statute. The proper term for the mental state element of MCL 500.3113 is scienter. See n 10 of this opinion.

-6-

motorcycle under MCL 500.3113 is subject to the criminal statute that prohibits an unlawful taking, MCL 750.414, under which plaintiff may present evidence to show that he did not knowingly take the motorcycle without the owner's authority." *Id*. at 333-34.

In the present case, there is no question that plaintiff was "willing using" and "willingly operating" the car; and there also is no question that plaintiff's use and operation of the car was without authority of Meade Lexus, the owner, as the rental agreement prohibited an unlicensed person from driving it. We must then determine whether these facts amounted to an unlawful "taking," in other words, that plaintiff got the Lexus "into one's hands or possession by voluntary action." *Spectrum Health*, 492 Mich at 516-17 (quotation marks omitted).

Plaintiff knew that the car was rented from Meade Lexus, and that there was a written rental agreement; in his deposition, plaintiff testified that his wife rented the car, and that he accompanied her when she picked up the car and saw her sign the rental agreement, although he testified that he never read it. Plaintiff also testified that, on the day of the accident, he drove the car to his job at his family's gas station, where his shift that day was from noon until midnight. He further testified that after work, he used the car to drive from the gas station to pick up a friend, whom he was driving to a pharmacy, and during that drive the accident occurred. These facts are more than sufficient to demonstrate that plaintiff was in possession of the car at the time of the accident, through voluntary action, and thus he "took" it. He also clearly was "operating" the car at the time of the accident. While the requirements under MCL 500.3113(a) that a person "take" and "operate" a vehicle are separate, meaning that each must be established, there is no requirement in the statute that different facts establish each of the elements.

For example, while it is possible to possess or "take" a car without "operating" or driving it, such as by placing it on a flatbed truck and moving it, or by using a tow truck, it is not possible to drive it without also taking it; the act of driving a car can only be accomplished by someone who is in possession of it and operating the controls. Moreover, "possession" is not an act of limited duration; possession continues as long as someone exercises control over the thing possessed. For instance, courts are often called upon to determine when a statute of limitation begins to run. With regard to statutes which involve some sort of unlawful possession, possession is generally deemed a continuing act which continually triggers a new period of limitations. Thus, for example, courts have held that unlawful possession of government property and possession of drugs are continuing offenses, subjecting the person who possesses them to prosecution at any time, precisely because possession is a continuing act and thus a continuing offense. See, e.g., *United States v Blizzard*, 27 F3d 100, 102 (CA 4, 1994) (citation omitted) ("[p]ossession is by nature a continuing offense . . . ."); *id*. at 102 ("The government may prosecute a person who continues to possess unlawful drugs irrespective of the date he first possessed them."); see also *People v Owen*, 251 Mich App 76, 82; 649 NW2d 777 (2002) ("Having liquor in his possession was a continuing offense as long as possession existed, and for such an offense the statute provides but one penalty.").

Because possession is a continuing act, plaintiff exercised extended control of the car throughout the day of the accident. He took the car by driving it to the gas station where he worked. He continued to possess it throughout the day while he was at work, even though he was not driving the car, because he had control of it and the keys, and thus could permit or exclude anyone from entering or driving the car as he saw fit. And finally, plaintiff continued or resumed his possession

-7-

of the car when, after work, he again drove it, picked up a friend, continued to drive, and finally was involved in the accident at issue.  Meade Lexus, as owner, placed restrictions in the rental agreement, under which only a licensed driver was authorized to use, operate or drive the car. Plaintiff's acts of driving the car to work and driving it again after work until his involvement in the accident constituted use, operation and driving of the car, and thus were outside the authorization of the owner.  Such acts constituted an "unlawful taking" of the car because they constituted possession of it contrary to the owner's authorization.[7]

### E.  "UNLAWFUL" TAKING UNDER THE MOTOR VEHICLE CODE

#### 1.  *MONACO V HOME-OWNERS CO*

Defendant also argues that plaintiff's taking of the car was unlawful because, due to the fact that he had no valid driver's license, it was unlawful for plaintiff to drive.  Plaintiff relies on *Monaco v Home-Owners Ins Co*, 317 Mich App 738, 746; 896 NW2d 32 (2016), for the proposition that the distinction between the unlawful "taking" of a motor vehicle and the unlawful "use" of a motor vehicle precludes summary disposition in this case.

---

[7] Plaintiff's exercise of control and possession of the car during the day while he was at work, through his ability to lock the car and control access to it, do not appear to have been contrary to Meade Lexus's authorization.  Although Plaintiff was not an "Authorized Driver" because he was not licensed, his possession or taking of the car while it was parked at the gas station was not in violation of the rental agreement, because it did not involve using, operating or driving the car, the acts which the rental agreement forbade by anyone other than a licensed driver.  Thus, although plaintiff took the car while it sat at his workplace, that taking was not unlawful because it was not contrary to the owner's authorization.  That fact is unimportant here, however, because only the taking which was involved in plaintiff's injuries is at issue; that is the latest of the acts of possession, viz., plaintiff's driving after work.  That last taking was in violation of the owner's prohibitions, and thus was an "unlawful taking."

*Spectrum Health* noted that MCL 750.414 "contains disjunctive prohibitions: it prohibits someone from 'tak[ing]' a motor vehicle 'without authority' and, alternatively, it prohibits someone from 'us[ing]' a motor vehicle 'without authority.'  Thus, it is possible to violate MCL 750.414 without unlawfully *taking* the vehicle and, as a result, not all violations of MCL 750.414 necessarily constitute unlawful *takings* within the meaning of MCL 500.3113(a)."  492 Mich at 517 n 24. "Nevertheless, a taking that violates MCL 750.414 qualifies for the exclusion under MCL 500.3113(a)."  *Id*. *Rambin* noted that "For a person to take personal property without the authority of the actual owner, there must be some evidence to support the proposition that the person from whom he or she received the property did not have the right to control or command the property." 495 Mich at 332.  The only Authorized Driver under the rental agreement was plaintiff's wife, who had no right to command the property in any manner contrary to the rental agreement.  Thus, plaintiff took possession of the car from his wife, contrary to the directive of the owner, Meade Lexus.  Plaintiff's acts thus constituted an unlawful taking, whether or not they also constituted using a motor vehicle without authority.  *Spectrum Health*, 492 Mich at 517 n 24.

In *Monaco*, plaintiff sued on behalf of her daughter Alison as next-friend. *Id*. at 742. Alison was involved in an accident when she was 15 years old. *Id*. at 741. At the time of the accident, Alison had completed and passed a driver's training course and obtained a permit to drive, but that permit authorized her to drive only if accompanied by certain adults. *Id*. at 741-42. Alison drove the car unaccompanied and was injured. *Id*. at 742. Her mother, the plaintiff and the owner of the car, initially testified at her deposition that Alison had taken the car without permission, but later changed her testimony and said she had given permission for her daughter to take the car. *Id*. at 742-43. The trial court denied summary disposition and a directed verdict in favor of the defendant; thus, on appeal of that ruling, this Court was obligated to view the facts in the light most favorable to the plaintiff, meaning it assumed that Alison had been given permission to take the car. *Id*. at 744-45. As framed by the Court, the sole legal question presented on appeal was "whether a person injured in a motor vehicle accident is barred from recovering PIP benefits under MCL 500.3113(a)—which generally precludes coverage when a person used a vehicle that he or she had 'taken unlawfully'—when the owner of the vehicle permitted, gave consent to, or otherwise authorized the injured person to take and use the vehicle, but the injured person used the vehicle in violation of the law with the owner's knowledge." *Id*. at 741. This Court held, given the facts of the case, that § 3113(a) did not bar recovery. *Id*.

The defendant in *Monaco* alleged that the unlawfulness involved was a violation of the Motor Vehicle Code, MCL 257.1 *et seq*., specifically MCL 257.326 and MCL 257.310e(4). *Id*. at 750. MCL 257.326 provides that "[n]o person shall knowingly authorize or permit a motor vehicle owned by him or under his control to be driven by any person in violation of any of the provisions of [the MVC]."; MCL 257.310e(4) provides that a person with a level 1 graduated license, such as Alison had, is not permitted to drive unaccompanied. This Court noted that "The first level of inquiry when applying MCL 500.3113(a) always concerns whether the taking of a vehicle was unlawful, and if the taking was lawful, the inquiry ends because the statute is inapplicable." *Monaco*, 317 Mich App at 747. In analyzing the Motor Vehicle Code, the Court stated:

> Although it may have been unlawful for plaintiff, as owner of the car, to authorize or permit Alison *to drive the vehicle* in violation of the law, it had no bearing on, nor did it negate, the authorization and permission given by plaintiff for Alison *to take the vehicle.* Alison did not "gain[ ] possession of [the] vehicle contrary to Michigan law,"; rather, she unlawfully used the vehicle, i.e., Alison "put[ ] it into service" in violation of Michigan law. Plaintiff was not in violation of MCL 257.326 by merely allowing Alison to take possession and control of the car; it was the permission allowing Alison to drive the car that implicated MCL 257.326. While plaintiff's actions might have subjected her to prosecution under MCL 257.326, they did not turn an authorized or permitted taking into an unlawful taking. [317 Mich App at 750 (citations omitted).]

*Monaco* thus involved a completely different theory of unlawfulness than did *Spectrum Health* and *Rambin*, in each of which the source of the alleged unlawfulness was violations of MCL 750.414. In construing MCL 750.414 as applied through MCL 500.3113(a), "An individual may demonstrate that he or she did not unlawfully take a vehicle for purposes of MCL 500.3113(a) by 'present[ing] evidence to show that he [or she] did not knowingly take the [vehicle] without the owner's authority.' " *Rambin*, 495 Mich at 333-34. *Monaco* is simply a reiteration of the principle established in *Rambin* that if the person who takes the car "did not knowingly lack authority to

-9-

take the [car] because he believed that he had authority to do so," *id*. at 333, then the taking cannot be unlawful for purposes of MCL 750.414 as applied through MCL 500.3113(a). As *Monaco* noted, "The first level of inquiry when applying MCL 500.3113(a) always concerns whether the taking of a vehicle was unlawful, and if the taking was lawful, the inquiry ends because the statute is inapplicable." *Monaco*, 317 Mich App at 747. Thus, in *Monaco*, the analysis was short and straightforward—the taking was with the owner's permission, and thus Alison did not have the mens rea of taking the car contrary to the owner's authorization. Once it was resolved that "the taking was lawful, the inquiry ends because the statute is inapplicable." *Id*. Thus, although *Monaco* offered an additional lengthy commentary, all of it was dicta, as, by its own terms, *Monaco* acknowledged that its analysis under MCL 500.113(a) was at an end upon its determination of the fact that plaintiff authorized Alison to take the car.[8] See *Wold Architects & Engineers v Strat*, 474

---

[8] We are bound by *Monaco's* holding, MCR 7.215(J)(1), which as we have noted is narrow, but we pause to note our disagreement with its dicta. Most fundamentally, *Monaco* applied a completely incorrect legal standard. MCL 500.3113(a) "examines the legality of a taking from the perspective of the driver." *Spectrum Health,* 492 Mich at 522; *Rambin*, 495 Mich at 323 n 7. *Monaco*, however, considered the legality of the taking from the perspective not of Alison, the driver, but from that of her mother, the plaintiff (due to her status as Alison's next friend) and owner of the car. *Monaco* stated that Alison's mother "was not in violation of MCL 257.326 by merely allowing Alison to take possession and control of the car; it was the permission allowing Alison to drive the car that implicated MCL 257.326. While plaintiff's actions might have subjected her to prosecution under MCL 257.326, they did not turn an authorized or permitted taking into an unlawful taking." 317 Mich App at 750.

Because *Monaco* incorrectly analyzed the case from the perspective of the owner of the car rather than from that of the driver, it also relied on the wrong statute in considering whether the conduct was "unlawful." *Monaco* relied on MCL 257.326, which provides that "[n]o person shall knowingly authorize or permit a motor vehicle owned by him or under his control to be driven by any person in violation of any of the provisions of [the MVC]." 317 Mich App at 750. However, as noted, whether or not conduct was lawful from the perspective of the owner is not the relevant inquiry under MCL 500.3113(a). Instead, *Monaco* should have considered whether the taking was unlawful from the perspective of Alison, the driver and the person on whose behalf an "entitle[ment] to be paid personal protection insurance benefits" was sought, MCL 500.3113(a).. Thus, the proper provision to have considered under the Motor Vehicle Code would have been MCL 257.301, in conjunction with MCL 257.310e(4). MCL 257.301 provides generally, subject to some minor exceptions which were not at issue in *Monaco,* that "an individual shall not drive a motor vehicle on a highway in this state unless that individual has a valid operator's or chauffeur's license . . . ." Pursuant to MCL 257.310e(4), Alison did not have a valid operator's license to be driving unaccompanied. Violation of those provisions was "unlawful" within the meaning of *Spectrum Health*, because there are associated criminal penalties. See MCL 257.901. As we have noted in this opinion, driving a car always constitutes a taking of it, but taking it does not always require driving. Therefore, had *Monaco* considered the question from Alison's perspective, it should have concluded that her driving of the car constituted a taking, and the taking was unlawful because it was illegal under the Motor Vehicle Code for Alison to drive alone.

-10-

Mich 223, 233 n 3; 713 NW2d 750 (2006) (quotation marks and citations omitted) ("Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand, are, however illuminating, but obiter dicta and lack the force of an adjudication.").

## 2. SCIENTER REQUIREMENT OF MCL 500.3113(a) FOLLOWING THE ENACTMENT OF 2014 PA 489

Unlike in *Monaco*, in which Alison's mother had told Alison she could take the car, plaintiff's taking of the car in this case was directly contrary to Meade Lexus's express written terms. See *Spectrum Health*, 492 Mich at 524 (The driver, Craig Jr., "had express knowledge that Craig Sr. did not give him consent to take and use the vehicle. As a result, Craig Jr. took his father's vehicle without authority contrary to MCL 750.414 and, therefore, took it unlawfully within the meaning of MCL 500.3113(a)"). The only additional issue, then, in determining whether MCL 500.3113(a) bars recovery is analyzing whether plaintiff "knew or should have known" that the motor vehicle was taken unlawfully. That was not an issue in *Spectrum Health*; at that time, the Safe Harbor provision applied, but because the driver, Craig Jr. undisputedly was aware that his father, the car's owner, had prohibited him from taking it, there was no plausible argument that Craig Jr. reasonably believed that he was permitted to take the car. *Rambin* built upon that analysis, as it involved a case in which the plaintiff claimed he did not take the motorcycle at issue with knowledge that he was forbidden by the owner from doing so.

*Rambin* held that

> plaintiff may present evidence to establish that he did not run afoul of MCL 750.414, and thus did not unlawfully take the motorcycle under MCL 500.3113, because he did not knowingly lack authority to take the motorcycle because he believed that he had authority to do so. Stated differently, plaintiff's argument that he did not unlawfully take the motorcycle under MCL 500.3113 is subject to the criminal statute that prohibits an unlawful taking, MCL 750.414, under which

---

Because our disagreement with *Monaco* is in regards to statements which are, for the reasons stated, properly understood to be dicta, they are not binding on us. We trust that *Monaco* is and will remain an outlier—the situation in which a car owner tells a person whom the owner knows to be unlicensed under the circumstances that the person nevertheless may drive the car. We think both cases at issue in *Spectrum Health*, and this case, present the much more likely scenario of an unlicensed person taking a motor vehicle in contravention of the owner's express directives not to take it. Consequently, because *Monaco* is only controlling in the situation in which the owner purports to give permission to an unlicensed person to drive, we have no occasion to call for a special panel pursuant to MCR 7.215(J). We simply note the possible need for a special panel if a case involving facts similar to *Monaco*'s should recur.

-11-

plaintiff may present evidence to show that he did not knowingly take the motorcycle without the owner's authority. [495 Mich at 333-34.]

Because *Rambin* was decided under the previous version of MCL 500.3113(a), while the Safe Harbor provision still existed, however, and because the Legislature amended the statute following our Supreme Court's decision in *Rambin*,[9] we first address whether and how the amendment altered the standard set forth in *Rambin*.

We first note a threshold issue: we generally are bound by the Supreme Court's resolution of an issue, even if that issue no longer stands on solid legal footing. Thus, "The Court of Appeals is bound to follow decisions by [the Supreme] Court except where those decisions have clearly been overruled or superseded and is not authorized to anticipatorily ignore [Supreme Court] decisions where it determines that the foundations of a Supreme Court decision have been undermined." *Associated Builders & Contractors v. Lansing*, 499 Mich 177, 191-192, 880 NW2d 765 (2016). However, "It is clear that in the context in which our Supreme Court used the word 'superseded,' it was including legislative actions that changed the state of the law." *People v Anthony*, 327 Mich App 24, 44; 932 NW2d 202 (2019). Thus, we are not only free to consider whether the Legislature has changed the state of the law, we are obligated to do so.

"[A] change in the language of a prior statute presumably connotes a change in meaning," unless the change is merely "stylistic or nonsubstantive." *People v Arnold*, 502 Mich 438, 479; 918 NW2d 164 (2018). 2014 PA 489 made substantive changes to MCL 500.3113(a), eliminating the Safe Harbor provision, and imposing instead a scienter requirement.[10] Under the Safe Harbor provision, a person was not disqualified from eligibility for benefits so long as the person had a reasonable belief that the taking of the vehicle was lawful, even if such belief was erroneous. Following the amendment, a person who willingly operates or willingly uses a motor vehicle which someone took unlawfully is disqualified from eligibility for benefits if the person "knew or should have known" that the taking of the motor vehicle was unlawful; stated differently, such a person

---

[9] *Rambin* was decided on May 20, 2014. MCL 500.3113(a) was amended by 2014 PA 489, which was passed in its final version by each house of the Legislature on December 18, 2014, and was signed by the Governor on January 10, 2015.

[10] The term mens rea properly applies to the interpretation of MCL 750.414, because it is a criminal statute and mens rea is a criminal term of art. See n 6 of this opinion. 2014 PA 489 directly amended not the criminal statute, but MCL 500.3113(a), a provision of the Insurance Code. Thus, the more exact term for the provision which MCL 500.3113(a) amended is its scienter requirement; the term "scienter" can apply to either a crime or tort, and signifies that the act "was done designedly, understandingly, knowingly, or with guilty knowledge." *Massengile v Piper*, 294 Mich 653, 655; 293 NW 897 (1940) (citation omitted). "It is a term used in pleading to signify an allegation setting out the defendant's previous knowledge of a state of facts which it was his duty to guard against, and his omission to do which has led to the injury complained of." *Id.* at 655-656.

is disqualified from eligibility for benefits unless the person had no reason to know that the taking was unlawful. The new scienter standard is thus significantly more restrictive than was the Safe Harbor provision.

As we have noted, *Rambin* explored the "unlawful taking" language at issue in MCL 500.3113(a), in the context of unlawfulness provided by a violation of MCL 750.414, concluding that MCL 750.414 itself had a mens rea requirement. Among the reasons for that conclusion was the presumption in the criminal law against strict liability crimes, which could turn innocent conduct, such as driving a car, into a criminal offense without any bad intent on the part of the actor. See *Rambin*, 495 Mich at 327-28, 332. *Rambin* thus held, "Considering MCL 750.414 as a whole, we conclude that it properly requires a showing of knowingly taking without authority or knowingly using without authority." *Id.*

We conclude that the amendment of MCL 500.3113(a) through 2014 PA 489 modified the scienter requirement under that statute if a violation of MCL 750.414 is at issue.[11] As interpreted by our Supreme Court in *Spectrum Health* and *Rambin*, MCL 500.3113(a) and 750.414 relate to the same subject matter, and thus are *in pari materia*. As discussed earlier, "[s]tatutes that relate to the same subject or that share a common purpose are *in pari materia* and must be read together as one law, even if they contain no reference to one another and were enacted on different dates." *In re AGD*, 327 Mich App at 344 (quotation marks and citation omitted). Consequently, MCL 500.3113(a) and 750.414 must be read together as one law. See *id*.

Following *Rambin*, the Legislature added the "knew or should have known" language to MCL 500.3113(a). In construing a statute, we assume that when the Legislature crafts legislation it knows what the existing law is, and takes it into consideration. *O'Connell v Dir of Elections*, 316 Mich App 91, 99; 891 NW2d 240 (2016). If we simply treated the current version of MCL 500.3113(a) in exactly the same manner as in *Rambin*, i.e., that a violation "requires a showing of knowingly taking without authority or knowingly using without authority," 495 Mich at 332, it would be as if 2014 PA 489 had worked no change in the Safe Harbor provision or the scienter requirement. *Rambin* permitted disqualification from eligibility for benefits only if the plaintiff knew that the taking was contrary to the owner's direction; the "knew or should have known" standard makes it easier for an insurance company to establish that a plaintiff is disqualified from eligibility for benefits, because actual knowledge is no longer necessary so long as a plaintiff should have known that he or she was taking a motor vehicle contrary to the owner's directives.

In other words, if we were to conclude that 2014 PA 489 did not change the mens rea requirement which *Rambin* held applies in the context of MCL 750.414, the Legislature's enactment of the words "knew or should have known" would be surplusage and nugatory, contrary to our customary rules of construction. We are constrained to reject such an interpretation. We therefore conclude, applying the plain language of 2014 PA 489, that the Legislature amended

---

[11] As explained later in note 12 of this opinion, because the Legislature altered the scienter requirement of MCL 500.3113(a), the mens rea requirement of MCL 750.414 is modified only insofar as it relates to MCL 500.3113(a).

*Rambin's* scienter standard involving MCL 750.414 in cases in which disqualification from eligibility for benefits under MCL 500.6113(a) is at issue. Thus, we hold, when disqualification for PIP benefits is at issue, a person acts unlawfully under MCL 750.414 if the person takes a motor vehicle knowing the owner has prohibited the taking, *Rambin*, 495 Mich at 332, MCL 500.3113(a) (if the person "knew . . . the motor vehicle or motorcycle was taken unlawfully"); or if the person takes a motor vehicle or motorcycle and "should have known" that the owner prohibited the taking, MCL 500.3113(a).[12]

This case illustrates the difference between the two standards. We accept, as we must for purposes of a summary disposition ruling, that plaintiff was unaware of the terms of the rental agreement, as he testified. Plaintiff thus lacked actual knowledge that an unlicensed driver was prohibited by the rental agreement from taking the car; under the previous version of the statute as interpreted in *Rambin*, that would not have constituted an unlawful taking because plaintiff did not knowingly take the car without the owner's authority. *Rambin*, 495 Mich at 332. Nevertheless, the "should have known" language imposes a more restrictive standard. Plaintiff knew that the car was rented; he knew that there was a written rental agreement; and of course the law requires him to know his driving status, i.e., whether or not he is a licensed driver, as only a licensed driver may drive. MCL 257.301. Under the "should have known" standard, plaintiff was obligated to determine the scope of the authorization that the owner, Meade Lexus, had set under the rental agreement for a non-party such as himself, to take and drive the car. Stated another way, plaintiff knew that his wife, who was the party to the contractual agreement with Meade Lexus, was not the owner of the car, and that any authority to use the car could only be based on the terms set by the owner. Thus, before simply driving off, plaintiff was obligated to learn the terms of the rental agreement; he "should have known" the terms because a person may not simply take what he knows to be another's property without taking any steps to determine if the owner authorized the taking. The mere assumption or supposition that it must be permissible to take a third-party's property, without more, does not satisfy the "should have known" standard of MCL 500.3113(a).

Even the most cursory review of the rental agreement would have disclosed to plaintiff immediately that only a licensed driver could be an "Authorized Driver" under the agreement. If plaintiff in fact did not actually know that he was unlicensed, he nevertheless by law should have known that fact and thus he should have known that his taking of the car was unlawful under the circumstances.[13] Consequently, defendant has fully satisfied the standards of MCL 500.3113(a)

---

[12] Our construction of the mens rea standard of MCL 750.414 applies only in the context of litigation involving MCL 500.3113(a), because of the repeal of the Safe Harbor provision and the enactment of a new scienter standard in MCL 500.3113(a). Our Supreme Court's construction of the mens rea requirement under MCL 750.414 applies in a criminal prosecution brought under that statute.

[13] The record establishes that there was an administrative appeal regarding the revocation of plaintiff's driving privileges and plaintiff attended and testified at a hearing. The appeal was resolved against plaintiff, resulting in the revocation of his license, and a copy of the order was mailed to him. Thus, it is quite likely that plaintiff had actual knowledge that his license had been revoked. We need not, however, consider whether the evidence in that regard is so one-sided that

-14-

as they relate to MCL 750.414 in establishing an unlawful taking. Therefore, the trial court erred by failing to grant defendant's motion for summary disposition.

## IV. CONCLUSION

Defendant demonstrated that MCL 500.3113(a) was applicable: Plaintiff took the car unlawfully within the meaning of MCL 750.414; he willingly operated and willingly used it; and he did so in circumstances under which at a minimum he should have known that Meade Lexus, the car's owner, prohibited him from driving because he was not licensed to drive. Consequently, the trial court erred by failing to enter summary disposition on behalf of defendant. Accordingly, we reverse the order of the trial court denying defendant's motion for summary disposition, and remand the case to that court with directions that it enter an order of summary disposition on behalf of defendant. We do not retain jurisdiction. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Jonathan Tukel
/s/ Kathleen Jansen
/s/ Thomas C. Cameron

---

as a matter of law a factfinder could not reasonably conclude that plaintiff did not have actual knowledge of the status of his license, because the "should have known" standard leads to the same conclusion as would actual knowledge—that plaintiff is ineligible for benefits by virtue of MCL 500.3113(a).